108
Exh 1-7

FILED

'04 JUN 22 P12:02

U.S. DIST. COURT
EAST DIST. MICH
DETROIT

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

MARC KELLMAN and DAVID KELLMAN,

        Plaintiffs,

v.

THE COCA-COLA COMPANY,
COCA-COLA ENTERPRISES, INC.,
DETROIT RED WINGS, INC.,
and NHL ENTERPRISES, L.P.,
jointly and severally,

        Defendants.

Civil Action No. 03-71542

HON. JOHN CORBETT O'MEARA

Magistrate Judge Wallace Capel

| | |
|---|---|
| ANDREW J. MUNRO (P30304)<br>ANDREW M. ZACK (P27427)<br>Munro and Zack, P.C.<br>Attorneys for Plaintiffs<br>363 West Big Beaver Road, Suite 450<br>Troy, Michigan 48084<br>(248) 928-9000 | GERALD E. MCGLYNN, III (P41149)<br>Bliss McGlynn, P.C.<br>Attorney for Detroit Red Wings, Inc.<br>2075 West Big Beaver Road, Suite 600<br>Troy, Michigan 48084<br>(248) 649-6090 |

## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
## WITH REGARD TO COUNT VI OF THE FIRST AMENDED COMPLAINT

Plaintiffs, David Kellman and Mark Kellman, through their attorneys, Munro and Zack, P.C., submit the following Motion For Summary Judgment with Regard To Count VI Of The Amended Complaint pursuant to FRCP Rule 56(c). For the reasons contained in the accompanying Brief in support of this motion, the Court should grant the motion and grant summary judgment in favor of Plaintiffs and against Defendant, Detroit Red Wings, Inc. with repsect to the issue of liability on Count VI of the First Amended Complaint.

Counsel certifies to the Court under L.R. 7.1 that Plaintiffs in good faith have attempted

to confer with opposing counsel regarding the contents of this motion, but did not obtain concurrence in the relief sought.

WHEREFORE, Plaintiffs, David Kellman and Mark Kellman, respectfully request the Court to grant their Motion For Summary Judgment with Regard To Count VI Of The First Amended Complaint pursuant to FRCP Rule 56(c).

Munro and Zack, P.C.

By: _____
ANDREW J. MUNRO (P30304)
ANDREW M. ZACK (P27427)
Attorneys for Plaintiffs

Dated: June 21, 2004

J:\W\Wing-Nut\Coca-Cola\sum judg mtn.wpd

2

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

MARC KELLMAN and DAVID KELLMAN,

      Plaintiffs,

v.

THE COCA-COLA COMPANY,
COCA-COLA ENTERPRISES, INC.,
DETROIT RED WINGS, INC.,
and NHL ENTERPRISES, L.P.,
jointly and severally,

      Defendants.

Civil Action No. 03-71542

HON. JOHN CORBETT O'MEARA

Magistrate Judge Wallace Capel

---

ANDREW J. MUNRO (P30304)
ANDREW M. ZACK (P27427)
Munro and Zack, P.C.
Attorneys for Plaintiffs
363 West Big Beaver Road, Suite 450
Troy, Michigan 48084
(248) 928-9000

GERALD E. MCGLYNN, III (P41149)
Bliss McGlynn, P.C.
Attorney for Detroit Red Wings, Inc.
2075 West Big Beaver Road, Suite 600
Troy, Michigan 48084
(248) 649-6090

---

## PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT WITH REGARD TO COUNT VI OF THE FIRST AMENDED COMPLAINT

## <u>Table of Contents</u>

Index of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii, iii

Statement of Issues Presented . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

Controlling Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

I.      Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III.    Argument

        A.      The Standard For Granting Summary Judgment . . . . . . . . . . . . . . . . . . . . . 10

        B.      The Independent Creation Defense . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        C.      The Substantial Similarity Defense . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

IV.     Conclusion and Relief Requested . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

## Index of Authorities

<u>**Cases**</u>

<u>Arnstein v. Porter</u>,
    154 F.2d 464 (2nd Cir. 1946) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

<u>Burns v. Gear</u>,
    No. 00-CV-70916, 2000 WL 1923514 (E.D. Mich. November 17, 2000)
    (J. O'Meara) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

<u>Celotex Corp. v. Catrett</u>,
    477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) . . . . . . . . . . . . . . . . . . . . . . . . 10

<u>Choate v. Landis Tool Co.</u>,
    46 F. Supp. 774 (E.D. Mich. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

<u>Ellis v. Diffie</u>,
    177 F.3d 503 (6th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14

<u>Feist Publications, Inc. v. Rural Tel. Serv. Co.</u>,
    499 U.S. 340, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991) . . . . . . . . . . . . . . . . . . . . . . . 5

<u>Hochling v. Universal City Studios, Inc.</u>,
    618 F.2d 972 (2d Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

<u>Janda v. Riley-Meggs Industries, Inc.</u>,
    764 F. Supp 1223 (E.D. Mich. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

<u>Kohus v. Mariol</u>,
    328 F.3d 848 (6th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 14

<u>Moyna LLC v. Victoria's Secret Direct New York, LLC</u>,
    2003 WL 219883032 (S.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14

<u>Murray Hill Publications, Inc. v. Twentieth Century Fox Film Corp.</u>,
    361 F.3d 312 (6th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

<u>O'Neill v. Dell Publ'g Co.</u>,
    630 F.2d 685 (1st Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

<u>Procter & Gamble Co. v. Colgate-Palmolive Co.</u>,
    199 F.3d 74 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Street v. J.C. Bradford & Co.,
       886 F.2d 1472 6th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 14

Stromback v. New Line Cinema,
       2002 WL 31548260 (E.D. Mich. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

Wickham v. Knoxville Int'l Energy Exposition, Inc.,
       739 F.2d 1094 (6th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## Court Rules

Fed R. Civ. P. 26(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6,8

Fed. R. Civ. P.45(c)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Fed. R. Civ. P.56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,10,12

## STATEMENT OF ISSUES PRESENTED

**Issue 1:**

Whether the Court should find that the undisputed facts establish that Detroit Red Wings, Inc.'s t-shirts were not the product of independent creation and that Plaintiffs are entitled to summary judgment motion against Detroit Red Wings as to that defense to Plaintiffs' copyright infringement claim set forth in Count VI of the First Amended Complaint.

**Issue 2:**

Whether the Court should find that the undisputed facts establish that a reasonable lay person, in the words of this Court in its August 12, 2003 Opinion, "would determine that what is being depicted on the t-shirts is a two-dimensional image of a wing nut hat that is substantially similar (if not identical) to Plaintiffs' Wing Nut Copyright" and that Plaintiffs are entitled to summary judgment motion against Detroit Red Wings, Inc. as to that element of their copyright infringement claim set forth in Count VI of the First Amended Complaint.

## CONTROLLING AUTHORITIES

**Issue 1:**

Ellis v. Diffie, 177 F.3d 503 (6th Cir. 1999)

Kohus v. Mariol, 328 F.3d 848 (6th Cir. 2003)

Moyna LLC v. Victoria's Secret Direct New York, LLC, 2003 WL 219883032 (S.D.N.Y. 2003)

Street v. J.C. Bradford & Co., 886 F.2d 1472 (6th Cir. 1989)

This Court's August 12, 2003 Opinion

**Issue 2:**

Burns v. Frontline Gear, 2000 WL 1923514 (E.D. Mich. November 17, 2000)

Kohus v. Mariol, 328 F.3d 848 (6th Cir. 2003)

Stromback v. New Line Cinema, 2002 WL 31548260 (E.D. Mich. 2002)

This Court's August 12, 2003 Opinion

## I.   INTRODUCTION

In its August 12, 2003 Opinion, this Court determined that the Red Wings had contractually acknowledged the validity of Plaintiffs Marc Kellman's and David Kellman's ("the Kellmans") Wing Nut Copyright and that the design of their novelty hat possessed original elements that are entitled to protection under the federal copyright laws. This meant that Defendant Detroit Red Wings, Inc. ("the Red Wings") could no longer challenge the validity of the Wing Nut Copyright and the only remaining liability issues relating to Count VI of Plaintiffs' First Amended Complaint for copyright infringement against the Red Wings were (1) whether the designs on the alleged infringing articles, the Red Wings' T-shirts, were the product of independent creation and (2) whether there is "substantial similarity" between the Wing Nut Copyright and the Red Wings' t-shirts. The undisputed facts, combined with this Court's prior observations on those two issues, conclusively establish that (1) the Red Wings' t-shirts were not the product of independent creation and (2) a reasonable lay person, in the words of this Court, "would determine that what is being depicted on the t-shirts is a two-dimensional image of a wing nut hat that is substantially similar (if not identical) to Plaintiffs' Wing Nut Copyright". The Kellmans should therefore be granted summary judgment in their favor on Count VI of the First Amended Complaint pursuant to Fed R. Civ. P. 56(c) and this case should proceed to trial on the issue of damages only.

## II.   STATEMENT OF FACTS

This Court is already familiar with the background to this lawsuit, having recounted it in its August 12, 2003 Opinion at 2-3:[1]

---

[1] The August 12, 2003 Opinion is attached as Exhibit 1.

1

"The Kellmans assert that, while opposing their attempts to market the novelty hat, the Red Wings also sought to exploit Plaintiffs's copyright and patent for their own commercial benefit. The Red Wings allowed IBM Corporation and the advertising firm Ogilvy & Mather to publish a print advertisement in various newspapers featuring a person wearing Plaintiffs' novelty hat. This alleged infringement on the Kellmans' Wing Nut Copyright and Patent led to the execution on May 9, 2000 of a Settlement Agreement between the Kellmans, the Red Wings and others."

As this Court ruled in its August 12, 2003 Opinion at 7, "because the Red Wings drafted the Settlement Agreement, * * * any ambiguity in its construction must be construed against the Red Wings."

In essence, the outline of the deal codified in the Settlement Agreement, a copy of which is attached as Exhibit 2, entailed the following:

1.      In return for a payment of $15,000.00, the Kellmans assigned to the Red Wings their trademark allowing the use of the phrases and marks "Wing Nut" and "Wing-Nut". Paragraphs 1(a) and 3(a) of the Settlement Agreement and this Court's August 12, 2003 Opinion at 3.

2.      The Red Wings obtained the right to manufacture, sell and license the sales of Wing Nut merchandise other than the Novelty Hats bearing the "Wing Nut" trademark, while paying the Kellmans a royalty on such sales. Paragraph 3(b) of the Settlement Agreement and this Court's August 12, 2003 Opinion at 3.

3.      With regard to the Wing Nut novelty hats, the Red Wings obtained control over their manufacture, but the Kellmans retained the Wing Nut Copyright for the novelty hat's design, which the Red Wings expressly authorized Plaintiffs to license to the manufacturer. The critical language in the Settlement Agreement is as follows:

2

a.    "WHEREAS <u>the Kellmans own a copyright registration for a "wing nut</u>
<u>sculpture</u>".  Settlement Agreement at 2; emphasis added.

b.    "<u>As between the parties, the Kellmans shall retain any copyright and</u>
<u>patent rights in the underlying design of the Novelty Hats</u>, but shall not retain any right to
manufacture, distribute or otherwise market the Novelty Hats except as expressly set forth
below".  <u>Id</u>., Paragraph 2(a); emphasis added.

c.    "The Team [the Red Wings] will choose a manufacturer, in its sole
discretion, who shall be the sole entity licensed by the Team to manufacture the Novelty Hats
(the "Manufacturer")".  <u>Id</u>., Paragraph  2(b).

d.    "The Kellmans shall be solely responsible for reaching an independent
agreement with Manufacturer, pursuant to which <u>the Kellmans shall license for a fee to</u>
<u>Manufacturer the copyright and patent rights to manufacture the Novelty Hats</u>".  <u>Id</u>., Paragraph
2(c); emphasis added.

In other words, the Settlement Agreement resolved two intellectual property disputes
between the Kellmans and the Red Wings.  The first dispute, which involved the validity of the
Kellmans' Wing Nut trademark, was resolved by assigning it to the Red Wings for consideration.
The second dispute, which concerned the validity of the Kellmans' Wing Nut Copyright, was
settled by having the Red Wings acknowledge the Copyright's validity in the connection with
future manufacture and sales of the novelty hat and by permitting the Kellmans to license the
Copyright to the designated manufacturer.  Thus, <u>had the Red Wings not acknowledged in the</u>
<u>Settlement Agreement that the Kellmans' Wing Nut Copyright was valid, the Red Wings would</u>
<u>not have agreed that the Kellmans could license the Copyright to the designated manufacturer of</u>

3

the novelty hats.  Indeed, it would have made no sense for the Red Wings to have consented to

the licensing arrangement unless they agreed that the Wing Nut Copyright was valid.

Based upon its analysis of the Settlement Agreement, this Court specifically found that

the Red Wings had acknowledged the Wing Nut Copyright's validity in its August 12, 2003

Opinion, stating:

1.      "Significantly, the Settlement Agreement also recognized the validity of the

Kellmans' Wing Nut Copyright and Patent, stating that '[a]s between the parties, the Kellmans

shall retain any copyright and patent rights in the underlying design of the Novelty Hats" and that

they 'shall be solely responsible for reaching an independent agreement with Manufacturer,

pursuant to which the Kellmans shall license for a fee to Manufacturer the copyright and patent

rights to manufacture the Novelty Hats'".  August 12, 2003 Opinion at 3; emphasis added.

2.      "Page 2 of the Settlement Agreement contains acknowledgments that the

Kellmans 'own a copyright registration for a 'wing nut sculpture' and that they 'own a patent for

a wing nut hat design'.  These copyright and patent rights are separate and distinct from 'the

Marks'.  * * * Significantly, there is no comparable provision [to Paragraph 1] in the Settlement

Agreement assigning to the Red Wings any of Plaintiffs' rights to their Copyright or Patent.

Indeed, Paragraph 2(c) states that the Kellmans 'shall be solely responsible for reaching an

independent agreement with Manufacturer, pursuant to which the Kellmans shall license for a fee

to Manufacturer the copyright and patent rights to manufacture the Novelty Hats'.  Importantly,

this language does not mention assignment or licensing with regard to Plaintiffs' Copyright or

Patent, and thus belies the Red Wings' position".  August 12, 2003 Opinion at 8-9; emphasis

4

added.[2]

In evaluating Defendants' motion to dismiss, this Court applied the Sixth Circuit's two-part test in Kohus v. Mariol, 328 F.3d 848 (6th Cir. 2003), for determining whether Defendants had copied "constituent elements of the work that are original", the filtering prong of the test for copyright infringement set forth in Feist Publications, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991). In rejecting Defendants' contention that there was nothing original about the Wing Nut Sculpture, this Court held: "The Defendants' argument that the Wing Nut Sculpture is merely a 3D depiction of a common hardware device is too narrow. When the Kohus filtering step is applied, the original elements that remain are the artistic expression of the idea of fanatical support for the Detroit Red Wings in the form of a novelty foam hat shaped like a wing nut, as well as the size, shape and proportions of the Wing Nut Sculpture." August 12, 2003 Opinion at 11.

This Court therefore determined in its August 12, 2003 Opinion that the Red Wings had contractually acknowledged the validity of the Kellmans' Wing Nut Copyright and that the design of the novelty hat possessed original elements that are entitled to protection under the federal copyright laws. Thus, the Red Wings can no longer challenge the validity of the Wing Nut Copyright and the only remaining liability issues under Count VI are (1) whether the designs on the alleged infringing articles, the Red Wings' T-shirts, were the product of independent creation and (2) whether there is "substantial similarity" between the Wing Nut Copyright and

---

[2]This Court made that specific analysis of the Settlement Agreement in response to the Red Wings' argument in their motion to dismiss that they had a license to sell "wing nut merchandise" under the Kellmans' copyright and design patents. That argument of course assumed the validity of the Wing Nut Copyright.

the Red Wings' T-shirts.

Nevertheless, the Red Wings served Plaintiffs with certain requests for admissions, interrogatories and document production requests that plainly delved into the validity of the Wing Nut Copyright. The Red Wings also served deposition notices on both Plaintiffs. Because those discovery requests concern issues which have already been decided by this Court and therefore were interposed to annoy, oppress and/or cause Plaintiffs undue burden or expense, Plaintiffs filed a motion for a protective under Fed R. Civ. P. 26(c) that the discovery requests at issue regarding the validity of the Wing Nut Copyright neither be had and nor inquired into. With regard to the deposition notices served on Plaintiffs, the Kellmans also sought a protective order preventing the Red Wings from inquiring into those same areas.

The Red Wings also subpoenaed Kenneth I. Kohn ("Kohn"), the Kellmans' attorney who applied for and obtained the Wing Nut Copyright. The subpoena duces tecum served on Kohn demanded that he appear for a deposition and produce the following documents:

> All documents and things pertaining to U.S. Copyright VA827-878, entitled, "Wing Nut Sculpture," issued to David B. Kellman and Marc E. Kellman, including any searches prior to filing the application, the application, attachments to the application, drawings, sketches, computer generated images, sculptures, specimens, correspondence with the United States Copyright Office, allegations of infringement, allegations of invalidity, agreements, proposed agreements, sale, proposed sale, license, proposed license, assignment, proposed assignment, or revocation/termination of any agreements.

Because the Kohn subpoena was clearly directed to obtaining discovery regarding the validity of the Wing Nut Copyright, Plaintiffs filed a motion to quash under Fed R. Civ. P. 45(c)(3).

Magistrate Judge Capel heard Plaintiffs' motions on May 3, 2004 and properly granted Plaintiffs' motions based upon the Red Wings' acknowledgment of the Wing Nut Copyright's validity in the Settlement Agreement. On May 11, 2004, Magistrate Judge Capel then entered

the Order Granting Plaintiffs' Motion For Protective Order And Motion To Quash The Subpoena Duces Tecum Served On Kenneth I. Kohn, Esq., the form of which had been stipulated to by the parties' counsel.

The Red Wings objected to Magistrate Judge Capel's Order pursuant to Rule 72(a), claiming that it was "clearly erroneous or contrary to law". In their brief, the Red Wings went to great lengths to downplay the significance of the Settlement Agreement. Instead, they accused Plaintiffs of fraud and obstructionist behavior, while also contending that enforcement of Magistrate Judge Capel's Order would "hamstring the Red Wings from advocating *any defense* (including non-infringement) in this case." Red Wings' Rule 72(a) Brief at 2; emphasis in original. The Red Wings also argued that "Magistrate Judge Capel was induced to grant Plaintiffs' motions for a protective order and to quash the subpoena on the basis of Plaintiffs' incorrect representations that the issue of validity had been conclusively resolved by this Court's decision on Defendants' motion to dismiss." Red Wings' Rule 72(a) Brief at 1-2. This Court rejected the Red Wings' intemperate arguments and affirmed Magistrate Capel's Order by issuing its Order Affirming Magistrate Judge Wallace Capel's May 11, 2004 Order on June 8, 2004.

In the meantime, discovery had proceeded with respect to the independent creation and substantial similarity defenses. The Red Wings provided the following responses to the Kellmans' discovery requests (the complete responses are attached as Exhibit 3):

**INTERROGATORY NO. 8:**

If the Red Wings contend that the likeness or image of a wing nut on any merchandise, including but not limited to T-shirts, that it has sold does not infringe on the Wing Nut Copyright and/or the Wing Nut Patent or is an independent creation, state all fact on

7

which that contention is based, identify all persons with knowledge of such facts and identify all documents supporting that contention, including but not limited to opinions of counsel.

**ANSWER:**

DRW [the Red Wings] objects to this interrogatory to the extent that it seeks information pertaining to the "Wing Nut Patent" which is no longer relevant to this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence. DRW further objects to this interrogatory to the extent that it seeks information protected by attorney-client privilege, work product, or other confidential information . Notwithstanding the foregoing, DRW answers this interrogatory as follows:

All current facts on which DRW relies for its contention that the likeness or image of a wing nut on its merchandise does not infringe Plaintiffs' Wing Nut Copyright are identified in the pleadings, and other documents filed by the parties to this lawsuit, all of which are in Plaintiffs' possession. Persons with knowledge of such facts are identified on Defendants' Initial Disclosure pursuant to F.R.C.P. 26. DRW may supplement its answer to this interrogatory according to the Federal Rules of Civil Procedure.

**REQUEST FOR PRODUCTION NO. 8:**

Produce copies of all documents identified in response to Interrogatory No. 8.

**RESPONSE:**

See DRW's answer to Plaintiffs' Interrogatory No. 8.

\* \* \* \* \* \*

**INTERROGATORY NO. 10:**

With respect to any merchandise, including but not limited to T-shirts, bearing the likeness or image of a wing nut sold by the Red Wings since May 9, 2000, state:

a.      The identities of any persons or entities who conceived or developed any facet or portion of such merchandise, including but not limited to the likeness or image of a wing nut;

8

b.    How such persons or entities conceived or developed any facet or portion of such merchandise, including but not limited to the likeness or image of a wing nut;

c.    Whether any facet or portion of such merchandise, including but not limited to the likeness or image of a wing nut, is or was based on the Wing Nut Sculpture that is the subject of the Wing Nut Copyright and if so, identify the facet or portion and the manner in which it is or was based on the Wing Nut Sculpture;

d.    Identify all documents evidencing, referring or relating to the answer to this Interrogatory.

**ANSWER:**

a-b.    DRW objects to sections a-b of this interrogatory to the extent that it seeks information outside of its custody or control or information that may be in the possession of another and not DRW as being unduly broad and burdensome. DRW further objects to sections a-b of this interrogatory to the extent that it seeks information protected by attorney-client privilege, work product, or other confidential information. Subject to the foregoing objections, DRW responds to this interrogatory as follows: Robin Brant, former employee of Skyline Custom Impressions (no longer in business), former address and phone number: 32046 Edward Street, Madison Heights, Michigan 48071, (248) 588-8075.

c.    DRW objects to subparagraph c of this interrogatory as being vague, overbroad, and therefore unintelligible. Plaintiffs have yet to define the protective elements of the "Wing Nut Sculpture," when compared to the elements of a generic wing nut in a manner that would enable DRW to answer this interrogatory.

d.    DRW objects to subparagraph c of this interrogatory as being vague, unduly broad, and over burdensome in that it requests "all documents evidencing, referring, or relating to the answer to this interrogatory." DRW cannot possibly identify "all" such documents. In any event, DRW asserts that relevant documents have been produced in this case or have been otherwise attached as exhibits to various pleadings filed by the parties in this case.

**REQUEST FOR PRODUCTION NO. 10:**

Produce copies of all documents identified in response to Interrogatory No. 10.

9

**RESPONSE:**

See DRW's answer to Plaintiffs' Interrogatory No. 10.

Defendants have not supplemented their responses to the above discovery responses. In fact, when Plaintiffs moved to compel more complete responses to those (and other) discovery requests, the Red Wings successfully argued to Magistrate Judge Capel that their responses were sufficient and need not be supplemented. See Magistrate Judge Capel's May 11, 2004 Order Denying Plaintiffs' Motion to Compel Discovery.

Plaintiffs also subpoenaed the records of Skyline Custom Impressions (and its successor known as Skyline Screen Printing & Embroidery), the firm identified by the Red Wings in their response to Interrogatory No. 10 as the company that conceived or developed the Red Wings' t-shirts at issue in this case. Copies of the subpoenas are attached as Exhibit 4. The only documents produced in response to the subpoenas are copies of the transparencies used in the silk screening process. See Exhibit 5. The Skyline entities produced no documents supporting the Red Wings' claim that their t-shirt design was created independently from the existing Wing Nut Sculpture design, with which the Red Wings were already familiar.

## III.   ARGUMENT

### A.   The Standard For Granting Summary Judgment

With regard to the standard governing the grant of summary judgment motions under Fed R. Civ. P. 56(c), the Sixth Circuit has held that the moving party bears the burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case. Street v. J.C. Bradford & Co., 886 F.2d 1472 (6th Cir. 1989) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Once the moving party has met

10

its burden, the nonmoving party bears the burden of establishing that a genuine issue of material fact does indeed exist. Janda v. Riley-Meggs Industries, Inc., 764 F. Supp 1223, 1227 (E.D. Mich. 1991). In other words, summary judgment may be appropriately granted where the issues in a particular case involve solely the application of law to undisputed facts. Choate v. Landis Tool Co., 46 F. Supp. 774 (E.D. Mich. 1980).

In Street, supra, 886 F.2d at 1479-1480, the Sixth Circuit promulgated a "series of principles to be applied in motions for summary judgment":

1.    The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element as to a non-movant's case.

2.    This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

3.    The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

4.    The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

5.    The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is

11

"implausible."

When those standards are applied, it is clear that this Court should grant the Kellmans' summary judgment motion pursuant to Fed R. Civ. P. 56(c).

**B.**    **The Independent Creation Defense**

Given the Red Wings' obvious familiarity with the Wing Nut Sculpture by virtue of their dealings with Plaintiffs before and after the Settlement Agreement and its own sales experience with the novelty hat, it is patently obvious that the Red Wings copied the Kellmans' novelty hat onto the T-shirts in order to capitalize on its popularity in the marketplace. In response to those indisputable facts, this Court indicated in its August 12, 2003 Opinion that it was extremely skeptical of the Red Wings' defenses based upon the "independent creation" issue, stating that "[i]ndeed, Plaintiffs point out that given the Red Wings' familiarity with the Wing Nut Sculpture by virtue of their past dealings with Plaintiffs, a reasonable inference could be made that the Red Wings copied the Kellmans' novelty hat onto the t-shirts in order to capitalize on its popularity in the marketplace." August 12, 2003 Opinion at 12, n. 5.

It is well established that "an inference of copying is rebuttable by evidence of independent creation of the allegedly infringing work." Ellis v. Diffie, 177 F.3d 503, 507 (6th Cir. 1999). Accord, Procter & Gamble Co. v. Colgate-Palmolive Co., 199 F.3d 74, 77 (1999). However, the defendant raising that defense must produce credible evidence that it created the allegedly infringing work independently. Moyna LLC v. Victoria's Secret Direct New York, LLC, 2003 WL 219883032, *6 (S.D.N.Y. 2003).

When requested to come forward with such evidence, the Red Wings utterly failed to do so. In response to Interrogatory No. 10, which sought to elicit the factual basis for any potential

12

independent creation defense, Defendant merely identified the firm and its former employee involved with silk screening the Red Wings' t-shirts, but provided absolutely no response to the inquiry regarding "how such persons or entities conceived or developed any facet or portion of such merchandise, including but not limited to the likeness or image of a wing nut". See the Red Wings' non-response to Interrogatory No. 10(b). When asked in Interrogatory No. 10(c) whether any facet or portion of the t-shirts was based on the Wing Nut Sculpture, the Red Wings disingenuously stated that they could not respond because Plaintiffs had not defined the "protective [sic] elements of the 'Wing Nut Sculpture, when compared to the elements of a generic wing nut". Defendant's stone-walling response completely ignored this Court's ruling that "the original elements that remain are the artistic expression of the idea of fanatical support for the Detroit Red Wings in the form of a novelty foam hat shaped like a wing nut, as well as the size, shape and proportions of the Wing Nut Sculpture." August 12, 2003 Opinion at 11. In addition, the Red Wings refused to identify any specific documents supporting their independent creation defense. See the Red Wings' responses to Interrogatory No. 10(d) and Request for Production No. 10.

Having successfully defended their non-responses to Interrogatory No. 10 and Request for Production No. 10 before Magistrate Judge Capel, the Red Wings are now hoist on their own petard. They have no credible evidence showing that they or the company that manufactured their t-shirts independently created the wing nut hat designs on those infringing articles.[3]

---

[3]The meager documents produced by the Skyline entities consist solely of transparencies that provide absolutely no evidence that the t-shirt manufacturer did anything other than copy the Wing Nut Sculpture design used in the novelty hats that the Red Wings had already been selling at the Joe Louis Arena and their Hockeytown stores.

13

Therefore, they cannot meet their burden under Street, Ellis and Moyna, and the undisputed facts show that there is no factual basis for an independent creation defense.

### C.     The Substantial Similarity Defense

In Kohus, the Sixth Circuit held that the inquiry in the substantial similarity test 'should focus on the *intended audience*. This will ordinarily be the lay public, in which case the finder of fact's judgment should be from the perspective of the lay observer or, as Monogram Models put it, the ordinary reasonable person." 328 F.3d at 857; emphasis in original. With regard to this inquiry, it is true that the Kohus Court also stated that "because substantial similarity is customarily an extremely close question of fact, summary judgment has traditionally been frowned upon in copyright litigation." 328 F.3d at 853; citing Hoehling v. Universal City Studios, Inc., 618 F.2d 972, 977 (2d Cir. 1980).  More recently, the Sixth Circuit in Murray Hill Publications, Inc. v. Twentieth Century Fox Film Corp., 361 F.3d 312, 321 (6th Cir. 2004), stated with reference to the propriety of summary judgment in the context of the substantial similarity of literary works that "the question of substantial similarity can usually be decided on the basis of the works themselves and rarely, if ever, involves questions of credibility, the peculiar province of the jury.  Also, while judges 'may not be qualified literary critics, [they] are fitted by training and experience to compare literary works and determine whether they evidence substantial similarity." (Citing O'Neill v. Dell Publ'g Co., 630 F.2d 685, 690 (1st Cir. 1980)).

Illustrating the Sixth Circuit's observation, in Stromback v. New Line Cinema, 2002 WL 31548260, *4 (E.D. Mich. 2002), this Court addressed the propriety of granting summary judgment with regard to the substantial similarity inquiry involving literary works and stated:

The Court recognizes that this inquiry of 'substantial similarity' is inherently

14

factual. As Arnstein v. Porter, 154 F.2d 464 (2nd Cir. 1946), noted many years ago, granting summary judgment, particularly in favor of a defendant, is a practice to be used sparingly in copyright cases. Yet, the Sixth Circuit has held that a court may compare the two works and render a judgment for the defendant on the ground that as a matter of law a trier of fact would not be permitted to find substantial similarity. Wickham [v. Knoxville Int'l Energy Exposition, Inc.], 739 F.2d [1094, at] 1097 [(6th Cir. 1984)]. In fact, this Court in Burns v. Gear, No. 00-CV-70916, 2000 WL 1923514, *2-3 (E.D. Mich. November 17, 2000)(J. O'Meara) did just this and found no copyright infringement as a matter of law without the question going to the jury. The Court does so here too.

As in Stromback and Burns, this is one of the rare cases in which summary judgment on the substantial similarity issue is warranted.

This Court has already made the required comparison of the Wing Nut Sculpture (depicted in the photograph attached as Exhibit 6) with the Red Wings' t-shirts (depicted in the photographs attached as Exhibit 7). In its August 12, 2003 Opinion, this Court stated that "by performing a side-by-side examination of the Wing Nut Sculpture and the Red Wings' t-shirts, we believe that a reasonable lay person would determine that what is being depicted on the t-shirts is a two-dimensional image of a wing nut hat that is substantially similar (if not identical) to Plaintiffs' Wing Nut Copyright." Id. at 12 (emphasis added).

Since this Court issued its August 12, 2003 Opinion, the Red Wings responded to Plaintiffs' Interrogatory No. 8 and Request for Production No. 8, which sought information and documents regarding the factual basis for Defendant's claim that the t-shirts are not substantially similar to the Wing Nut Sculpture. Again, the Red Wings decided to engage in stonewall tactics, by disdainfully referring Plaintiffs to Defendant's pleadings and unspecified "documents filed by the parties to this lawsuit" and then electing to defend that non-response in response to Plaintiffs' motion to compel discovery. See the Red Wings' responses to Interrogatory No. 8 and Request

15

for Production No. 8. As a result, the Red Wings cannot furnish this Court with any probative evidence whatsoever that would remotely justify not finding that "what is being depicted on the t-shirts is a two-dimensional image of a wing nut hat that is substantially similar (if not identical) to Plaintiffs' Wing Nut Copyright." Plaintiffs are accordingly entitled to summary judgment in their favor on the substantial similarity issue as well.

## IV.    CONCLUSION AND RELIEF REQUESTED

This Court has already ruled that the Wing Nut Sculpture has original elements that the federal copyright laws protect. Because the undisputed facts show that there is no basis for the Red Wings' remaining defenses of independent creation and substantial similarity, this Court should grant summary judgment in favor of the Kellmans on Count VI of their Amended Complaint on the liability issue. This case should then proceed to trial on the issue of damages for Defendant's acts of copyright infringement.

Respectfully submitted,

MUNRO AND ZACK, P.C.

By: _____

ANDREW J. MUNRO (P30204)
ANDREW M. ZACK (P27427)
Attorneys for Plaintiffs

Dated: June 21, 2004

J:\W\Wing-Nut\Coca-Cola\sj brief.wpd

16

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

MARC KELLMAN and DAVID KELLMAN,

        Plaintiffs,

v.

THE COCA-COLA COMPANY,
COCA-COLA ENTERPRISES, INC.,
DETROIT RED WINGS, INC.,
and NHL ENTERPRISES, L.P.,
jointly and severally,

        Defendants.

Civil Action No. 03-71542

HON. JOHN CORBETT O'MEARA

Magistrate Judge Wallace Capel

| | |
|---|---|
| ANDREW J. MUNRO (P30304) | GERALD E. MCGLYNN, III (P41149) |
| ANDREW M. ZACK (P27427) | Bliss McGlynn, P.C. |
| Munro and Zack, P.C. | Attorney for Detroit Red Wings, Inc. |
| Attorneys for Plaintiffs | 2075 West Big Beaver Road, Suite 600 |
| 363 West Big Beaver Road, Suite 450 | Troy, Michigan 48084 |
| Troy, Michigan 48084 | (248) 649-6090 |
| (248) 928-9000 | |

## NOTICE OF HEARING

Please take notice that **PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

**WITH REGARD TO COUNT VI OF THE FIRST AMENDED COMPLAINT** shall be heard

at a date and time to be set by the Court.

                                 **MUNRO AND ZACK, P.C.**

By:                                

                                 ANDREW J. MUNRO (P30304)
                                 ANDREW M. ZACK (P27427)
                                 Attorneys for Plaintiffs

Dated: June 21, 2004
J:\W\Wing-Nut\Coca-Cola\Noh.6.21.04.wpd

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**FILED**

'04   JUN 22

MARC KELLMAN and DAVID KELLMAN,

        Plaintiffs,

v.

CIVIL ACTION NO. 0371542
Hon. John Corbett O'Meara
Magistrate Judge Wallace Capel, Jr.

THE COCA-COLA COMPANY, a Delaware corporation,
COCA-COLA ENTERPRISES, INC., a Delaware corporation,
DETROIT RED WINGS, INC., a Michigan corporation,
and NHL ENTERPRISES, L.P., a Delaware corporation,
jointly and severally,

        Defendants.

                             /

| | |
|---|---|
| ANDREW J. MUNRO (P30304)<br>ANDREW M. ZACK (P27427)<br>Munro, Bergesen and Zack, P.L.C.<br>Attorneys for Plaintiffs<br>363 West Big Beaver Road, Suite 450<br>Troy, Michigan 48084<br>(248) 928-9000 | GERALD E. MCGLYNN, III (P41149)<br>Bliss McGlynn, P.C.<br>Attorney for Detroit Red Wings, Inc.<br>2075 West Big Beaver Road, Suite 600<br>Troy, Michigan 48084<br>(248) 649-6090 |

                             /

## CERTIFICATE OF SERVICE

The undersigned states that on the 21st day of June, 2004, she served copies of the following:
(1) Plaintiffs' Motion for Summary Judgment With Regard to Count VI of the First Amended
Complaint; (2) Plaintiffs' Brief in Support of Motion for Summary Judgment With Regard to Count
VI of the First Amended Complaint; (3) Notice of Hearing and; (4) this Certificate of Service upon
Gerald E. McGlynn, III, Attorney for Detroit Red Wings, Inc. at the address described above via U.S.
First Class Mail.

*Kristina Nixon*

KRISTINA NIXON

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**F I L E D**

AUG 1 2 2003

CLERK'S OFFICE
U. S. DISTRICT COURT
EASTERN MICHIGAN

MARC KELLMAN and DAVID KELLMAN,

        Plaintiffs,

No. 03-71542

Hon. John Corbett O'Meara

V.

THE COCA-COLA COMPANY,
COCA-COLA ENTERPRISES, INC.
DETROIT RED WINGS, INC. and NHL
ENTERPRISES, L.P.,

        Defendants.

_____/

## OPINION AND ORDER

Before the Court are Defendants' motions to dismiss. This is a patent and copyright infringement case. Plaintiffs Marc and David Kellman allege that the Detroit Red Wings and the Coca-Cola Corporation used an image of their copyrighted and patented "Wing Nut Hat" on t-shirts and bottlecaps. We had a hearing on August 8, 2003. Having reviewed and considered the parties' motions, briefs and supporting documents, and having further considered the oral arguments of counsel, the Court is now prepared to rule on this matter. For the following reasons, we deny Defendants' motions to dismiss with respect to the copyright claims but grant their motions to dismiss with respect to the design patent claims.

## BACKGROUND FACTS

Plaintiffs Marc Kellman and David Kellman invented a novelty foam hat in the shape of a wing nut sometime prior to October 9, 1996. According to the Kellmans, they are devoted fans of the Detroit Red Wings organization and created the hat so that they and other fans could

demonstrate that they were "nuts" about the "wings." The Kellmans contend that their invention was not only the foam novelty hat, but also the visual pun that this hat represents.

The Kellmans applied for a patent for this invention on October 9, 1996. On November 14, 1996, the Kellmans registered with the United States Copyright Office a work entitled "Wing Nut Sculpture" bearing Registration No. VA 827-878. (Plaintiffs' Exhibit 2). On December 16, 1997, the Kellmans received a patent from the United States Commissioner of Patents and Trademarks for a novelty hat in the shape of a wing nut bearing Patent No. Des. 387,541. (Plaintiffs' Exhibit 3). Specifically, the patent issued is for "the ornamental design for a hat as shown and described." Id. In order to register the word phrases and marks "Wing Nut" and "Wing-Nut," the Kellmans applied for a trademark with the United States Commissioner of Patents and Trademarks bearing Serial Nos. 75/178,835 and 75/361,267.

As explained by the Kellmans, the Detroit Red Wings objected to their attempts to manufacture and market the novelty hats and other items using the Wing Nut trademark. According to Plaintiffs, the Red Wings would not allow them to sell the novelty hat at Joe Louis Arena or in company stores. The Red Wings also filed opposition proceedings in the United States Patent and Trademark Office, objecting to the Kellmans' request for the Wing Nut Trademark.

The Kellmans assert that, while opposing their attempts to market the novelty hat, the Red Wings also sought to exploit Plaintiffs' copyright and patent for its own commercial benefit. The Red Wings allowed IBM Corporation and the advertising firm Ogilvy & Mather to publish a print advertisement in various newspapers featuring a person wearing Plaintiffs' novelty hat. This alleged infringement on the Kellmans' Wing Nut Copyright and Patent led to the execution

on May 9, 2000 of a Settlement Agreement between the Kellmans, the Red Wings and others. (Plaintiffs' Exhibit 4).

Drafted by an attorney representing both the Red Wings and NHL Enterprises, Ltd., the 2000 Settlement Agreement provided that the Red Wings agreed to withdraw and dismiss its opposition proceedings in the United States Patent and Trademark Office regarding the Wing Nut Trademark. The Kellmans, in turn, agreed to assign the Wing Nut Trademark to the Red Wings, thereby entitling the latter to use the word phrases and marks "Wing Nut" and "Wing-Nut."[1]  In addition, the Settlement Agreement gave the Red Wings the right to sell the novelty hat and related merchandise bearing the "Wing Nut" trademark while giving the Kellmans a percentage of any sales. Significantly, the Settlement Agreement also recognized the validity of the Kellmans' Wing Nut Copyright and Patent, stating that "[a]s between the parties, the Kellmans shall retain any copyright and patent rights in the underlying design of the Novelty Hats" and that they "shall be solely responsible for reaching an independent agreement with Manufacturer, pursuant to which the Kellmans shall license for a fee to Manufacturer the copyright and patent rights to manufacture the Novelty Hats." (Plaintiffs' Exhibit 4).

In this current litigation, Plaintiffs allege that not only did the Red Wings fail to make reasonable, good faith efforts to sell the novelty hats and related merchandise,[2] but that the Red

---

[1] There is no trademark claim in this case because of the assignment of the trademark to the Red Wings. The Plaintiffs maintain that the trademark was only for the terms "Wing Nut" and "Wing-Nut." Neither party included a copy of the original trademark registration in their briefs. There is a copy of the assignment of the trademark in Plaintiffs' original complaint, Exhibit D.

[2] We declined to extend supplemental jurisdiction over Plaintiffs' state claims. Count VIII of the First Amended Complaint alleged a breach of the settlement agreement by the Detroit Red Wings. Count IX alleged a breach of the settlement agreement by the Detroit Red

Wings also infringed on the Kellmans' "Wing Nut" Copyright and Patent. The Red Wings marketed and sold for commercial purposes at Joe Louis Arena and the Red Wings' Hockeytown retail stores two versions of a t-shirt bearing a design that Plaintiffs allege is an exact reproduction of, and/or substantially similar to, the designs depicted in the Kellmans' Wing Nut Copyright and Patent. In other words, the t-shirts display a picture of what appears to be the Kellmans' novelty hat. (See Plaintiff's Exhibit 5). Plaintiffs allege that the Red Wings made the reproduction of Plaintiffs' copyrighted and patented designs without their consent or permission.

Another type of alleged infringement surfaced in late 2002 and early 2003, when the Coca-Cola Company and/or Coca-Cola Enterprises, Inc. (collectively "the Coca-Cola Defendants"), marketed and sold Coca-Cola soda pop, upon which the words, "Be a Wing-Nut!," appeared on the label of its products and the term, "Wing-Nuts," appeared on the cap of the products ("Coca-Cola's Wing-Nuts Campaign"). (Plaintiffs' Exhibit 6). Plaintiffs maintain that a substantially similar reproduction of the designs depicted in their Wing Nut Copyright and Patent also appeared on the bottle cap of the soda bottles sold in Coca-Cola's Wing-Nuts Campaign. Again, in other words, the bottlecaps contain an image of what appears to be a picture of the Kellmans' novelty hat. The Kellmans allege that the Coca-Cola Defendants took these actions without their consent or permission. Plaintiffs also assert that the Coca-Cola Defendants' reproduction on their bottle caps of the designs depicted in the Kellmans' "Wing Nut" Copyright and Patent was done with the knowledge, consent and contribution of the Red

---

Wings and NHL Enterprises. Count X alleged fraudulent inducement by the Detroit Red Wings. These state claims were dismissed on May 15, 2003. At issue now are only the copyright and patent claims.

4

Wings.

The Coca-Cola Defendants filed motions to dismiss Counts I and III of the First Amended Complaint. Count I alleges direct copyright infringement by the Coca-Cola Defendants. Count III alleges direct patent infringement by the Coca-Cola Defendants. The Detroit Red Wings filed motions to dismiss the remaining counts of the First Amended Complaint. Count II alleges contributory copyright infringement by the Detroit Red Wings. Count IV alleges inducement of patent infringement by the Detroit Red Wings. Count V alleges contributory patent infringement by the Detroit Red Wings. In other words, although Counts II, IV and V are against the Detroit Red Wings, they are derived from the alleged violations of the Coca-Cola Defendants and deal with the use of the image on the Coca-Cola bottlecaps. (Hence, if we dismissed Counts I and III against the Coca-Cola Defendants, Counts II, IV and V against the Detroit Red Wings for their alleged role in these violations would also be dismissed.)   Finally, Count VI alleges direct copyright infringement by the Detroit Red Wings while Count VII alleges direct patent infringement by the Detroit Red Wings. Counts VI and VII deal with the use of the image on the t-shirts sold by the Detroit Red Wings. For the following reasons, we dismiss Counts III, IV, V, and VII which deal with the patent claims. Counts I, II and VI which deal with the copyright claims remain.

## STANDARD OF REVIEW

In considering a motion brought pursuant to Fed. R. Civ. P. 12 (b)(6), the court "must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief." In re DeLorean Motor Co., 991 F.2d 1236, 1240 (6th Cir.

1993). Moreover, the test for dismissal under Fed. R. Civ. P. 12(b)(6) is a stringent one. As the United States Supreme Court held in <u>Hartford Fire Ins. Co. v. California</u>, 509 U.S. 764, 811 (1993), "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief."

## LAW AND ANALYSIS

### I. Settlement Agreement

The Red Wings[3] first argue that we should dismiss this case because of the prior Settlement Agreement. The Red Wings assert that they had a license to sell "wing nut merchandise" under the Kellmans' copyright and design patents. Plaintiffs counter that such a position misrepresents the 2000 Settlement Agreement between the parties. At issue, is the interpretation of Paragraph 3 of the Settlement Agreement. The Kellmans argue that the Settlement Agreement granted a license to the Red Wings only with respect to the "Wing Nut" <u>trademark</u>. In other words, according to the Kellmans, while the Red Wings could use the trademark "Wing Nut" or "Wing-Nut" on the t-shirts and bottlecaps (i.e. merchandise), they could not take a picture of Plaintiffs' patented and copyrighted novelty hat and place it on the merchandise.

Assuming the Settlement Agreement is ambiguous on this point, at this stage in the litigation especially, we should defer to Plaintiffs' interpretation. (As a substantive matter, we also believe Plaintiffs' interpretation is more correct.) Furthermore, as Plaintiffs point out,

---

[3] Only the Red Wings make this argument concerning the Settlement Agreement as the Coca-Cola Defendants were not privy to this agreement.

6

assuming there is any ambiguity, because the Red Wings drafted the Settlement Agreement, which provides that New York law governs, any ambiguity in its construction must be construed against the Red Wings. See Evercady Ins. Co. v. Farrell, 304 A.D.2d 830, 757 N.Y.S.2d 859, 860 (2003).

Paragraph 3, which is labeled "Payment," concerns the payment to the Kellmans for entering into the Settlement Agreement and assigning the "Marks," which are defined on page 2 of the Settlement Agreement as the written words "Wing Nut" and "Wing-Nut." Paragraph 3(a) requires the payment of $15,000.00 to the Kellmans upon execution of the Settlement Agreement. Paragraph 3(b) provides for additional payments to Plaintiffs, calculated as a percentage of the retail or wholesale sales prices of licensed "Team Products," which are defined as "Wing Nut Merchandise" that is manufactured or licensed by the Red Wings. "Wing Nut Merchandise," in turn, is defined as "merchandise, other than the Novelty Hats,"[4] which is produced or licensed by the Red Wings and which "bear[. . .] the Marks." Thus, as argued by Plaintiffs, "Wing Nut Merchandise," which consists of products that bear either the word "Wing Nut" or "Wing-Nut," is completely distinct from the articles depicted in the Wing Nut Copyright and Patent. As Plaintiffs point out, by definition, "Wing Nut Merchandise" is any other product besides the articles depicted in the Wing Nut Copyright and Patent. Although we certainly do not need to make a definitive ruling at this point in the litigation, we tend to agree with Plaintiffs' interpretation. For example, if the Red Wings were to design a t-shirt with the trademarked phrase "Wing Nut" without a visual representation of the image copyrighted and patented by

---

[4]The Novelty Hats, which are defined on page 1 of the Settlement Agreement as "novelty foam hats using, inter alia, the colors red and white, in the shape of a wing nut," are the same articles whose designs are depicted in the Kellmans' Wing Nut Copyright and Wing Nut Patent.

Plaintiffs, then we believe that the Red Wings would be within its rights as set forth in the Settlement Agreement.  While the Red Wings vehemently argue that it had a license to use the mark "wing-nut" on merchandise, we do not believe they may use the mark "wing-nut" while violating Plaintiffs' Patent and Copyright.   (Although as we explain infra, as a substantive matter, we do not believe the patent has been infringed.)

The language of Paragraph 3(b) on which the Red Wings base their argument states: "For the first three complete hockey seasons that commence on or after the Effective Date [May 9, 2000], the Team [the Red Wings] will make a good faith effort to produce and license the right to sell merchandise, other than the Novelty Hats, bearing the Marks ('Wing Nut Merchandise') in the Arena and in Team-owned stores within seventy-five (75) miles of the Arena."  As emphasized by the Kellmans, nothing in this language constitutes or even refers to a grant by the Kellmans to the Red Wings of a license of Plaintiffs' rights under their Copyright or Patent. Rather, as we interpret the agreement, the only licensing right that the Kellmans conferred upon the Red Wings related to the production of and the licensing of others to sell products bearing either the word "Wing Nut" or "Wing-Nut" – not the use of the visual image of their novelty hat on other merchandise.

Furthermore, as emphasized by Plaintiffs, the Settlement Agreement's treatment of the Kellmans' Copyright and Patent indicates that the breadth of Red Wings' license argument has no merit. Page 2 of the Settlement Agreement contains acknowledgments that the Kellmans "own a copyright registration for a 'wing nut sculpture'" and that they "own a patent for a wing nut hat design." These copyright and patent rights are separate and distinct from "the Marks." Paragraph 1 of the Settlement Agreement, which is entitled "Assignment of Marks," contains an

8

assignment by the Kellmans to the Red Wings of "all their right and title in and to the Marks, and any other rights they claim in the words 'wing nut' including any good will associated with the Marks, and any trademark/service mark applications or registrations for the Marks . . . ." Significantly, there is no comparable provision in the Settlement Agreement assigning to the Red Wings any of Plaintiffs' rights to their Copyright or Patent. Indeed, Paragraph 2(c) states that the Kellmans "shall be solely responsible for reaching an independent agreement with Manufacturer, pursuant to which the Kellmans shall license for a fee to Manufacturer the copyright and patent rights to manufacture the Novelty Hats." Importantly, this language does not mention assignment or licensing with regard to Plaintiffs' Copyright or Patent, and thus belies the Red Wings' position.

In sum, we reject the Red Wings' argument that this case should be dismissed based on the Settlement Agreement alone. We believe that the Settlement Agreement establishes that, while the Red Wings have a license to use the phrase "wing nut," it does not have a license to use Plaintiffs' Copyright and Patent. And if the Settlement Agreement is ambiguous on this point, we should credit Plaintiffs' interpretation, especially at this stage of the litigation. Therefore, we must turn to the substantive arguments concerning copyrights and design patents.

## II. Copyright Infringement Claims

To establish a claim of copyright infringement, the claimant must prove (1) ownership of a valid copyright, and (2) "copying of constituent elements of the work that are original." Feist Publications, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991). Defendants do not dispute Plaintiffs' ownership of a valid copyright in the "Wing Nut Sculpture," but rather focus on the second element of the test.

9

The Sixth Circuit in <u>Kohus v. Mariol</u>, 328 F.3d 848 (6th Cir. 2003) recently articulated a two-part test for determining the second "copying" element of the test for copyright infringement. "The first step 'requires identifying which aspects of the artist's work, if any, are proctectable by copyright'; the second 'involves determining whether the allegedly infringing work is substantially similar to proctectable elements of the artist's work.'" <u>Id.</u> at 855 (citations omitted).

## A. The Filtering Of The Unprotected Elements Test

The first step in the <u>Kohus</u> inquiry involves filtering out the unoriginal, and therefore unprotected, elements of the Wing Nut Sculpture. <u>Id.</u> at 853. This is consistent with the United States Supreme Court's holding in <u>Feist Publications, Inc. v. Rural Tel. Serv. Co.</u>, 499 U.S. 340, 345 (1991), that the "<u>sine qua non</u> of copyright is originality." The originality requirement is usually not a difficult hurdle for copyright infringement plaintiffs to surmount. As the <u>Feist</u> Court held, "[o]riginal, as the term is used in copyright, means only that the work was independently created by the author . . . and that it possesses at least some minimal degree of creativity." <u>Id.</u>

Defendants want this Court to view the Wing Nut Sculpture as a merely a three dimensional foam depiction of a hardware screw device – in essence, something not original. Plaintiffs counter, however, that the Wing Nut Sculpture acts as a visual pun on the name of the hardware device. As explained by Plaintiffs, the "Wing" refers to the Detroit Red Wings. The "Nut" refers to a person who is fanatical in his or her devotion to something. Hence, as emphasized by Plaintiffs, "Wing Nuts" are literally fanatic supporters of the Detroit Red Wings and the "Wing Nut Sculpture" was designed as a novelty foam sculpture hat that expresses that idea in a very clever and original fashion. At this stage of the litigation, we agree with Plaintiffs.

The Defendants' argument that the Wing Nut Sculpture is merely a 3D depiction of a common hardware device is too narrow. When the <u>Kohus</u> filtering step is applied, the original elements that remain are the artistic expression of the idea of fanatical support for the Detroit Red Wings in the form of a novelty foam hat shaped like a wing nut, as well as the size, shape and proportions of the Wing Nut Sculpture.

## B. The Substantial Similarity Test

With regard to the second part of the <u>Kohus</u> test, the substantial similarity inquiry, the Sixth Circuit reiterated that "because substantial similarity is customarily an extremely close question of fact, summary judgment has traditionally been frowned upon in copyright litigation." 328 F.3d at 853; <u>citing Hoehling v. Universal City Studios, Inc.</u>, 618 F.2d 972, 977 (2nd Cir. 1980). The <u>Kohus</u> court also held that the inquiry in the substantial similarity test "should focus on the <u>intended audience</u>. This will ordinarily be the lay public, in which case the finder of fact's judgment should be from the perspective of the lay observer or, as <u>Monogram Models</u> put it, the ordinary reasonable person." 328 F.3d at 857; (emphasis in original). Defendants do not contest that the perspective of the ordinary reasonable lay person should be used in making the required substantial similarity inquiry. Because Plaintiffs' claims against the Red Wings and the Coca-Cola Defendants involve different infringing articles, they will be analyzed separately under the substantial similarity test.

### 1. Red Wings T-Shirts

The Red Wings would like this Court to find no substantial similarity between the Wing Nut Sculpture and its t-shirts based on very minor variations in the angles of the extensions of the wings, the tops of the wings, and widths of the bases. The Red Wings even suggest that the fact

that the hat on the cartoon bear's head is tilted represents some sort of substantial disparity. However, by performing a side-by-side examination of the Wing Nut Sculpture and the Red Wings' t-shirts, we believe that a reasonable lay person would determine that what is being depicted on the t-shirts is a two-dimensional image of a wing nut hat that is substantially similar (if not identical) to Plaintiffs' Wing Nut Copyright.[5]

The Red Wings' final argument is that their designs have a different total concept and feel from the Wing Nut Sculpture. This argument is based on the notion that the Wing Nut Sculpture is a three-dimensional sculpture that functions as a hat and the t-shirts contain two-dimensional drawings that are merely decorative. Yet, as pointed out by Plaintiffs, this argument is flawed because it would mean that a two-dimensional reproduction of a three-dimensional sculpture cannot infringe upon a copyright – a proposition that is contrary to prior case law. See, e.g., Ty Inc. v. Publications Intern. Ltd., 292 F.3d 512, 519 (7th Cir. 2002)("But remember that photographs of Beanie Babies are conceded to be derivative works, for which there may be a separate demand that Ty may one day seek to exploit, and so someone who without a license from Ty sold photographs of Beanie Babies would be an infringer of Ty's sculpture copyrights."); Rogers v. Koons, 751 F.Supp. 474 (S.D.N.Y. 1990) (holding that a reproduction of a copyrighted photograph in sculpture form did not preclude finding of copyright infringement).

---

[5]Indeed, Plaintiffs point out that given the Red Wings' familiarity with the Wing Nut Sculpture by virtue of their past dealings with Plaintiffs, a reasonable inference could be made that the Red Wings copied the Kellmans' novelty hat onto the t-shirts in order to capitalize on its popularity in the marketplace. Certainly, at a minimum, we agree that Plaintiffs should be allowed to take discovery from the Red Wings and anyone who designed and manufactured the t-shirts in order to see if the Red Wings intended to copy a two-dimensional image of the Wing Nut Copyright onto the t-shirts and to determine the source of the idea for placing an image of a wing nut hat on those products. Dismissal of Plaintiffs' claim against the Red Wings would be at the very least premature without allowing the Kellmans to take the discovery sought.

While a t-shirt and a novelty hat are, on their face, distinct items, there is a substantial similarity between the image displayed on the t-shirt and the Kellmans' copyrighted sculpture. The image used by the Red Wings on its t-shirts not only looks substantially similar to the Kellmans' copyrighted sculpture, but the message the t-shirt attempts to convey is also substantially similar, if not exact, to the message conveyed by the novelty hat. We believe that dismissal at this stage - without any discovery - would be error.

### 2. Coca-Cola Bottlecaps

A side-by-side comparison of the Wing Nut Sculpture and the Coca-Cola Defendants' bottlecaps shows that the differences cited by Defendants with respect to the shapes of the bases, hollow centers, and wings are very minor. Indeed, as Plaintiffs attest (and as Plaintiffs' counsel emphasized at the hearing), a reasonable lay person could find remarkable similarities between the two works and could conclude that the Coca-Cola Defendants reproduced a two-dimensional image of the novelty hat depicted in the Wing Nut Copyright as closely as possible on the limited space available on a bottlecap. As stressed by Plaintiffs, the Coca-Cola Defendants have prevented Plaintiffs from taking discovery from them, their local bottling company, their advertising firm, and the designer of the bottlecap regarding the source of the idea for placing the image in question on the bottlecaps. Therefore, many questions regarding the Coca-Cola Defendants' decision to use the image are unanswered at this point in the litigation. As is the case with regard to the Red Wings, we believe that dismissal of Plaintiffs' claims against the Coca-Cola Defendants would at the very least be premature without allowing the Kellmans the

13

opportunity to take discovery.[6]

## III. Design Patent Infringement Claims

In Counts III (against the Coca-Cola Defendants) and VII (against the Red Wings), the Kellmans claim that Defendants infringed their Wing Nut Patent. A design patent protects the non-functional aspects of an ornamental design as shown in the patent. Elmer v. ICC Fabricating Inc., 67 F.3d 1571, 1577 (Fed. Cir.1995). It is well established that "[d]etermining whether a design patent is infringed requires (1) construction of the patent claim, and (2) comparison of the construed claim to the accused product." Contessa Food Products, Inc. v. Conagra, Inc., 282 F.3d 1370, 1376 (Fed. Cir. 2002). In the first step of this analysis, the court construes the patent as a matter of law, Catalina Lighting, Inc. v. Lamps Plus, Inc., 295 F.3d 1277, 1285 (Fed. Cir. 2002), based upon the principle that "[i]n construing a design patent claim, the scope of the claimed design encompasses 'its visual appearance as a whole,' and in particular 'the visual impression it creates.'" Contessa Food Products, 295 F.3d at 1285; citing Durling v. Spectrum Furniture Co., 101 F.3d 100, 104-105 (Fed. Cir. 1996). The comparison test is conducted as a question of fact, Catalina Lighting, supra, 295 F.3d at 1285, and requires that a plaintiff satisfy two distinct tests known as the "ordinary observer" test and the "point of novelty" test. Contessa Food Products, 282 F.3d at 1377.

### A. Wing Nut Patent

Plaintiffs described their "Claim" in the Wing Nut Patent as "[t]he ornamental design for a hat, as shown and described" in five accompanying two-dimensional drawings of different

---

[6] Defendants cite a myriad of copyright cases that they attest support their position. We believe that Plaintiffs' counsel does a good job of distinguishing these cases in his brief and do not discuss all the cases in this Opinion and Order.

perspectives of a hat shaped like a wing nut. (Plaintiffs' Exhibit 3).   While Defendants

vehemently maintain that the design patent is for a hat, Plaintiffs maintain that the Wing Nut

Patent does not limit the design of the hat as consisting solely of a three-dimensional article.  The

fundamental disagreement concerning the patent issue is whether the design patent in this case is

solely for a hat shaped like a wing nut or for the visual pun or expressive qualities that the hat

creates.  Yet, we believe that the Kellmans' argument about the hat's expressive qualities fits

better with the purpose of copyright laws which protect expression and not patents which protect

tangible items.  As explained supra, in order to establish infringement of a design patent, a

plaintiff must satisfy two distinct tests known as the "ordinary observer" test and the "point of

novelty" test.  Because Plaintiffs cannot establish the former test, we do not address the latter.

## B. Ordinary Observer Test

In the seminal case of Gorham Co. v. White, 82 U.S. 511, 528 (1871), the United States

Supreme Court formulated the "ordinary observer" test as follows:

> We hold, therefore, that if, in the eye of an ordinary observer, giving such attention
> as a purchaser usually gives, two designs are substantially the same, if the
> resemblance is such as to deceive such an observer, inducing him to purchase one
> supposing it to be the other, the first one patented is infringed by the other.

Thus, as is the case with the copyright infringement "substantial similarity" test, the relevant

perspective is that of an ordinary reasonable lay observer, i.e., "observers of ordinary acuteness,

bringing to the examination of the article upon which the design has been placed that degree of

observation which men of ordinary intelligence give."  Id.

Defendants contend that the Kellmans' claim fails the "ordinary observer" test because

individuals could not possibly be deceived into purchasing the Red Wings' t-shirts or the Coca-

15

Cola Defendants' bottlecaps (in connection with a soda or "pop" bottle) thinking they were buying a hat, given that the Kellmans patented a design of a three-dimensional hat and Defendants' products are completely different articles of manufacture depicting two-dimensional images.  Plaintiffs counter by citing a forty year old case from the former United States Court of Customs and Patent Appeals ("CCPA") which contains some favorable language for Plaintiffs' position.  In In re Rubinfield, 270 F.2d 391, 393 (C.C.P.A. 1959), the CCPA held that "[i]t is well settled that a design patent may be infringed by articles which are specifically different from that shown in the patent.  It seems evident, therefore, that the inventive concept of a design is not limited to the exact article which happens to be selected for illustration in an application or patent."   Yet, In re Rubinfield was not in the context of a patent infringement case and the favorable language quoted above has not been relied on in any subsequent cases (at least we could not find any and the Kellmans have not found any.)  The fundamental question we have to decide – and there is not much case law to guide us – is whether a design patent can be infringed when the articles of manufacture are so entirely different (i.e. a novelty hat versus a t-shirt or bottlecap) that no reasonable person would purchase the t-shirt or bottlecap thinking that he or she was purchasing the novelty hat.  After analysis, we do not find that the design of the hat as compared to the t-shirts and bottlecaps to be substantially similar to cause confusion.  Plaintiffs attest that the design patent protects the visual pun that the novelty hat represents.  Yet, Plaintiffs cite no case law which holds that an intangible, visual pun can be protected by a design patent which is supposed to protect the non-functional, ornamental features of a tangible item.  Again, we think Plaintiffs' visual pun argument fits more in line with copyright protection – not patents.

The case most on point, cited by Defendants, is Vigil v. Walt Disney Co., 1998 U.S. Dist.

16

LEXIS 22853 (N.D. Cal. December 1, 1998), where the court found that a patented design for a hockey stick duck call was not substantially similar to defendant's hockey stick key chain because – despite some similarity in appearance (they both were in the shape of a hockey stick) – the two items were designed to perform entirely different functions.   Plaintiffs' attempt to distinguish this case by arguing that, in the case sub judice, the purposes/functions behind the novelty hat and the t-shirts and bottlecaps are the same (i.e devotion to Red Winds) is unavailing. In sum, because Plaintiffs' design patent claims fail the "ordinary observer" test, we dismiss the design patent claims.

### ORDER

It is hereby **ORDERED** that Defendants' motions to dismiss are **GRANTED IN PART.** Counts I, II and VI in Plaintiffs' First Amended Complaint dealing with the copyright claims remain but Counts III, IV, V, and VII in Plaintiffs' First Amended Complaint dealing with the patent claims are hereby **DISMISSED.**

John Corbett O'Meara
United States District Judge

Date: **AUG 1 2 2003**

PURSUANT TO RULE 77(d), FRCivP
COPIES HAVE BEEN MAILED TO:
Andrew M. Zack
David M. Zacks
Bruce W. Baber
Gerald E. McFlynn III
ON August 12, 2003

Jane E. Freeman
DEPUTY COURT CLERK

17



# SETTLEMENT AGREEMENT

THIS AGREEMENT (the "Agreement") is made this 9th day of May (the "Effective Date") by and between David B. Kellman, residing at 7050 Cedar Creek Drive, White Lake, Michigan 48383 and Marc E. Kellman, residing at 245 Cherrygrove Lane, Walled Lake, Michigan 48390 (together, the "Kellmans"), on the one hand, and Detroit Red Wings, Inc. (the "Team"), a Michigan corporation, having its principal place of business at Joe Louis Sports Arena, 600 Civic Center Drive, Detroit, Michigan 48226, NHL Enterprises, L.P. ("NHLE"), having its principal place of business at 1251 Avenue of the Americas, New York, New York 10020, IBM Corporation ("IBM"), having a principal place of business at Old Orchard Road, Armonk, New York 10504, and Ogilvy & Mather ("O & M"), having a principal place of business at Worldwide Plaza, 309 West 49th Street, New York, New York 10019, on the other hand.

WHEREAS the Team is in the business of (i) operating a professional hockey team that plays in the National Hockey League (the "NHL") and (ii) developing, promoting, merchandising and selling various goods and services related to the Team; and

WHEREAS NHLE has been granted the right to register and license the marks of the NHL and its member clubs, including the Team, in the United States;

WHEREAS NHLE, on behalf of the Team, long has sold and authorized others to sell merchandise bearing the Team's marks in order to create an association of such collateral merchandise with the Team and the sport of hockey;

WHEREAS the Team owns trademark registrations on the Principal Register of the United States Patent and Trademark Office for RED WINGS and DETROIT RED WINGS for a variety of goods and services;

WHEREAS the Kellmans have manufactured and sold novelty foam hats using, inter alia, the colors red and white, in the shape of a wing nut (the "Novelty Hats");

20960634v1

WHEREAS the Kellmans have used and have applied to register the marks WING NUT and WING-NUT (together, the "Marks") on the Principal Register of the United States Patent and Trademark Office for a variety of goods;

WHEREAS the Kellmans own a copyright registration for a "wing nut sculpture;"

WHEREAS the Kellmans own a patent for a wing nut hat design;

WHEREAS the Team has filed Notices of Opposition to the registration of the Marks asserting that such Marks infringe the Team's trademark rights;

WHEREAS the Team has asserted that the red and white colors and the terms "left wing" and "right wing" used on the Novelty Hats in combination with the Marks which also are used on the Novelty Hats, violate the trademarks and trade dress rights of the Team;

WHEREAS the Kellmans have asserted claims of copyright and patent infringement against the Team, the NHL, IBM and O & M concerning an advertisement that features a person wearing a Novelty Hat, a copy of which is attached hereto as Exhibit A (the "IBM Advertisement");

WHEREAS the Team, the NHL, IBM, and O & M, on the one hand, and the Kellmans, on the other hand, desire to settle the opposition proceedings, the trademark and trade dress claims and the copyright and patent infringement claims;

NOW THEREFORE, in consideration of the premises set forth above and the mutual promises set forth herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.    **ASSIGNMENT OF MARKS.**

   a.    The Kellmans agree immediately to transfer to the Team all of their right and title in and to the Marks, and any other rights they claim in the words "wing nut" including any good will associated with the Marks, and any trademark/service mark applications or registrations for the Marks wherever they may have been filed or acquired, and contemporaneously with the execution of this Agreement to execute the assignment attached as Exhibit B.

   b.    With respect to each of pending trademark application Serial Nos. 75/178,835 and 75/361,267, for which a Statement of Use or Amendment to Allege Use has not yet been filed:  (1) if the Mark is not in use on any of the goods listed in either or both applications as of the Effective Date of this Agreement, the Kellmans will file an express abandonment with the Patent and Trademark Office within ten (10) days of the Effective Date of this Agreement for each such application and will provide the Team with a copy of such filing with proof of mailing; and (2) if the Mark is in use on any of the goods listed in either application as of the Effective Date of this Agreement, the Kellmans will file (i) an Amendment to Allege Use or (ii) a Statement of Use and transfer each such application to the Team immediately upon the conversion of that application to a use-based application.  Schedule 1 to Exhibit B will be amended by the parties to reflect whether each of these applications has been abandoned or will be subsequently transferred.

   c.    The Kellmans will not hereafter file any further trademark or service mark applications for the Marks or for any other mark that contain the words "wing," "wings" or "wing nut" in any form, with any state, federal or foreign trademark office.

d.      Upon execution of this Agreement, the Kellmans will deliver to the Team a copy of all trademark files pertaining to the Marks that are in the Kellmans' or their attorney's possession.

e.      The Kellmans agree not to use the Marks or any other marks incorporating the words "wing" or "wings," in any word variation and/or design, in connection with any goods or services;

f.      The Kellmans agree never to assert rights obtained by its use of the Marks, or any other mark that incorporates the words "wing," "wings" or "wing nut" in any word variation and/or design, against the Team's, NHLE's, or their designees', licensees', or sponsors' use, registration or renewal of the Marks, and any mark that incorporates the words "wing," "wings" or "wing nut" in any word variation and/or design for any goods or services;

g.      Provided the Kellmans transfer to the Team all of their right and title to the Marks as specified in this paragraph 1, the Team agrees to withdraw consolidated Opposition Nos. 110,660 and 112,463. The Kellmans hereby agree and consent to the Team's withdrawal of consolidated Opposition Nos. 110,660 and 112,463 without prejudice. The parties, through their counsel, will sign a Withdrawal of Opposition in the form attached as Exhibit C.

h.      The Team, in its sole discretion, may prosecute or abandon any and all trademark applications and registrations for the Marks.

2.      **NOVELTY HATS.**

a.      As between the parties, the Kellmans shall retain any copyright and patent rights in the underlying design of the Novelty Hats, but shall not retain any rights to manufacture, distribute or otherwise market the Novelty Hats except as expressly set forth below.

b.      The Team will choose a manufacturer, in its sole discretion, who shall be the sole entity licensed by the Team to manufacture the Novelty Hats (the "Manufacturer"). The Team

will purchase Novelty Hats, in an amount to be determined by the Team in its sole discretion, from the Manufacturer for a period of time commencing as of the Effective Date and expiring on June 30, 2002.

      c.     The Kellmans shall be solely responsible for reaching an independent agreement with Manufacturer, pursuant to which the Kellmans shall license for a fee to Manufacturer any copyright and patent rights necessary to manufacture the Novelty Hats.

      d.     The Team shall determine, in its sole discretion, which trademarks and/or other Team-owned properties shall be affixed to or otherwise incorporated in the Novelty Hats.

      e.     The Team, in its sole discretion, will arrange for Novelty Hats to be sold in the Joe Louis Arena (the "Arena") and in Team-owned stores, and, pursuant to a special exception to standard NHLE licensing restrictions, the Team, in its sole discretion, will arrange for sales to certain retail outlets that the Kellmans identify as desiring to purchase Novelty Hats from the Team directly for resale to the public.

      f.     The Kellmans hereby grant to the Team, without any further compensation or other liability or obligation, the irrevocable right and permission, but not the obligation, to use, reproduce, distribute, display or otherwise use a depiction of the Novelty Hat in any and all media now known or hereafter developed for the purpose of advertising the sale of the Novelty Hats to the public.

      g.     The Kellmans may not sell any Novelty Hats without the prior written approval of the Team. By way of example, and without limiting the generality of the foregoing, the Kellmans may not manufacture or sell any Novelty Hats (in any color) to or in connection with any trade shows, conventions or other events.