b.        Except as specifically described in this Paragraph 2, the Team will have no further obligation to the Kellmans for or regarding the Novelty Hats. By way of illustration only, the Team will not share revenue generated from its sale of the Novelty Hats with the Kellmans.

3.        **PAYMENT**.

a.        <u>Trademarks</u>. The Kellmans shall receive Fifteen Thousand Dollars ($15,000) in the form of a check to be delivered to counsel for the Kellmans made payable to the Kellmans, following their execution and delivery to NHLE of this Agreement and Exhibit B to this Agreement.

b.        <u>Sales of Wing-Nut Merchandise Other Than Novelty Hats</u>. For the first three complete hockey seasons that commence on or after the Effective Date, the Team will make a good faith effort to produce and license the right to sell merchandise, other than the Novelty Hats, bearing the Marks ("Wing Nut Merchandise") in the Arena and in Team-owned stores within seventy-five (75) miles of the Arena. During that period, the Team will pay to the Kellmans a royalty payment in an amount equal to one percent (1%) of Retail Sales (as defined below) of Wing Nut Merchandise manufactured or licensed directly by the Team (the "Team Product") and NHLE will pay to the Kellmans a royalty payment in an amount equal to two percent (2%) of Net Sales (as defined below) of Wing Nut Merchandise licensed directly by NHLE on behalf of the Team ("NHLE Product"). "Retail Sales" shall mean the gross amount of sales of Team Product at the retail selling price net normal and reasonable cash and quantity discounts and returns for credit; no deductions shall be made for costs incurred in manufacturing, selling, distributing, advertising (including cooperative and promotional allowances), or for uncollectible accounts. "Net Sales" shall mean the gross amount of Licensed Sales (as defined below) of NHLE Product at the invoiced selling price net normal and reasonable cash and quantity discounts and returns for credit; no deductions shall be made for costs incurred in

manufacturing, selling, distributing, advertising (including cooperative and promotional allowances), or for uncollectible accounts. "Licensed Sales" shall mean the sale of NHLE Product directly to or for retail outlets, mail order or catalogs, where the Licensed Products are ultimately sold to consumers. Licensed Sales shall not include Retail Sales.

4.  **IBM ADVERTISEMENT AND INCIDENTAL USE OF NOVELTY HAT.**

a.  **IBM Advertisement.** The Kellmans hereby grant to the Team, NHLE, NHL, IBM and O & M, without any further compensation or other liability or obligation, the irrevocable right and permission, but not the obligation, to use, reproduce, distribute, display or otherwise use the IBM Advertisement, in whole or in part, in original or derivative form, in any and all media now known or hereafter developed for any purpose whatsoever in perpetuity.

b.  **Incidental Use of Novelty Hat.** The Kellmans covenant not to sue for, assert or bring any claim against the Team, NHL, NHLE, IBM, O & M and corporate marketing partners, sponsors and licensees of the Team, NHL and NHLE for any incidental use of the Novelty Hat in whole or in part, in original or derivative form, in any and all media now known or hereafter developed.

5.  **MUTUAL RELEASE OF CLAIMS.**

a.  Each party, on behalf of itself and each and all of its present or former officers, directors, affiliated entities or corporations, subsidiaries, divisions, partners, joint venturers, agents, attorneys, employees, representatives, successors and assigns, hereby fully, forever and irrevocably releases and discharges the other party and each and all of the other party's respective present or former directors, officers, affiliated entities or corporations, subsidiaries, divisions, partners, joint venturers, agents, attorneys, employees representatives, successors and assigns (collectively, the "Released Parties") from any and all "Claims" (as hereinafter defined) that each party and each and all of its present or former officers, directors,

affiliated entities or corporations, subsidiaries, divisions, partners, joint venturers, agents, attorneys, employees, representatives, successors and assigns have had, now have, or hereafter can or shall have against the Released Parties and each of them, for or by reason of any matter, cause or thing that is related in any manner to the Marks, the Team's trademark and trade dress claims, or the Kellmans' copyright and patent infringement claims, through and including the date hereof. This release does not operate to release Claims arising out of, this Agreement or the Exhibits to this Agreement.

b.     The term "Claims" shall include any and all claims, demands, agreements, contracts, covenants, reckonings, representations, warranties, promises, undertakings, actions, causes of action, obligations, controversies, debts, costs, expenses, accounts, damages, losses, injuries and liabilities, of whatever kind or nature, in law, equity or otherwise, present or future, whether known or unknown, suspected or unsuspected, arising out of, based upon or relating to the subject matter of this Agreement.

c.     Each party assumes the full risk of discovery or more complete understanding of any fact, event, law or thing whatsoever, material or otherwise, that if presently known or correctly and fully understood, would have affected this Agreement or its execution of this Agreement. Accordingly, it is the parties' intention to, and the parties do hereby, fully, finally and forever release and relinquish all Claims, known and unknown, that now exist, may hereafter exist (arising from or as a result of any act or omission occurring or failing to occur up to an including the effective date hereof), or heretofore existed, with respect to or in any way connected with the Claims released herein.

6.     **CONFIDENTIALITY**.

a.     No party will disclose the terms of this Agreement, except to the extent required pursuant to a lawfully-issued subpoena or similar judicial or administrative process, or

to the extent deemed necessary in an administrative or judicial proceeding in which the validity of the Marks may be questioned, or to the extent necessary to enforce the terms of this Agreement. Each party shall immediately notify the other party of any such request. In any event, disclosure shall be made only after making every reasonable effort to preserve the confidentiality of the terms hereof under a suitable protective order. Neither party shall make any public statement regarding the terms of this Agreement or any of the Exhibits to this Agreement. The Kellmans shall not initiate any direct contact with the media or anyone else concerning the resolution of this matter.

b. Each party shall be responsible for any disclosures made by its officers, directors, employees, legal counsel or other representatives. The parties shall not be responsible for any disclosure that is made as a result of theft of information or that is made in violation of any state or federal statute relating to financial privacy. By way of example and not limitation, unauthorized disclosure made by a bank employee or an Internal Revenue Service employee would not be the responsibility of any party.

7. **NOTICES.** All notices under this Agreement are effective when sent by certified mail, return receipt requested, and such notices shall be deemed to have been received when sent to the other party's respective address. In addition, any notice may be sent via facsimile with appropriate confirmation receipt to the party being notified and is effective upon transmission.

If to the Kellmans, notice shall be directed to:

> Mr. David B. Kellman
> 7050 Cedar Creek Drive
> White Lake, Michigan 48383
> Phone: (248)
> Facsimile: (248)
>
> and

Mr. Marc E. Kellman
245 Cherrygrove Lane
Walled Lake, Michigan 48390
Phone: (248)
Facsimile: (248)

with a copy to:

Andrew Munro, Esq.
Munro and Munro
3250 Big Beaver Road
Suite 520
Troy, Michigan 48084
Phone: (248)
Facsimile: (248)

If to the Team:

Robert E. Carr, Esq.
Detroit Red Wings, Inc.
600 Civic Center Drive
Joe Louis Arena
Detroit, Michigan 48226
Phone: (313) 471-3226
Facsimile: (313) 471-3259

with a copy to:

Mary J. Sotis, Esq.
NHL Enterprises, L.P.
1251 Avenue of the Americas
New York, New York 10020
Phone: (212) 789-2000
Facsimile: (212) 789-2020

If to NHLE:

Mary J. Sotis, Esq.
NHL Enterprises, L.P.
1251 Avenue of the Americas
New York, New York 10020
Phone: (212) 789-2000
Facsimile: (212) 789-2020

If to IBM:

> Ms. Debra Weiner
> Senior Program Manager
> IBM Corporation
> New Orchard Road
> Armonk, New York 10504
> Phone: (914) 499-1900
> Facsimile: (914) 499-6085

with a copy to:

> Michael Cronin, Esq.
> IBM Corporation
> New Orchard Road
> Armonk, New York 10504
> Phone: (914) 499-4744
> Facsimile: (914) 499-6085

If to O & M:

> Mr. Tro Piliguian
> President
> Ogilvy & Mather
> Worldwide Plaza
> 309 West 49th Street
> New York, New York 10019
> Phone: (212) 237-5118
> Facsimile: (212) 237-5120

with a copy to:

> Stuart Friedel, Esq.
> Davis & Gilbert LLP
> 1740 Broadway
> New York, New York 10019
> Phone: (212) 468-4800
> Facsimile: (212) 468-4888

8. **GOVERNING LAW**. The rights and obligations of the parties, and the validity, construction, enforcement and interpretation of this Agreement shall be governed and construed according to the laws of the State of New York.

9. **ENTIRE AGREEMENT**. This Agreement constitutes the entire agreement between the parties with respect to its subject matter. This Agreement supersedes all previous

20980534v1                          11

representations, understandings or agreements, oral or written, between the parties with respect

to its subject matter and cannot be modified except by a written instrument signed by all parties.

10.    **ASSIGNMENT.** This Agreement may not be assigned or transferred by either

party except with the consent of the other, except for a merger, sale or other transfer of

ownership or control or transfer of substantially all of the assets of the party to another individual

or entity.

DETROIT RED WINGS, INC.

By:
Name: ROBERT E. CARR
Title: General Counsel
Date: 7-18-00

NHL ENTERPRISES, L.P.

By: NHL Enterprises, Inc.,
    its general partner

By:
Name: Mary J. Sotis
Title: Vice President, Legal
    and Associate General Counsel
Date: JUNE 30, 2000

IBM CORPORATION

By:
Name: ELIZABETH PRIMROSE-SMITH
Title: VP Worldwide Olympic and Sports Sponsorships
Date: June, 19, 2000

OGILVY & MATHER

By:
Name: J.P. FETHERSTONHAUGH
Title: CHIEF OPERATING OFFICER
Date:
    May 30/00.

DAVID B. KELLMAN

By:
Date: 5-9-00

MARC E. KELLMAN

By:
Date: 5-9-00

## SCHEDULE 1

| Mark | Serial. No. | Goods |
|------|-------------|-------|
| WING-NUT | 75/976,535 | hats, clothing, namely T-shirts, sweatshirts, sweatpants, jackets, shirts, sweaters, shorts, pants, socks, ties, dresses, scarves, blouses, bathing suits and underwear |
| WING NUT | 75/178,835 | metal key rings and bumper stickers |
| WING NUT | 75/361,267 | cloth flags and pennants |

2098057v1

Case 2:03-cv-71542-JCO Document 62-2 Filed 06/22/04 Page 9 of 50

**EXHIBIT A**





# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

MARC KELLMAN and DAVID KELLMAN,

        Plaintiffs

v.

THE COCA-COLA COMPANY, a Delaware
corporation, COCA-COLA ENTERPRISES,
INC., a Delaware corporation, COCA-COLA
BOTTLING COMPANY OF MICHIGAN,
a Michigan corporation, DETROIT RED
WINGS, INC., a Michigan corporation, and
NHL ENTERPRISES, L.P., a Delaware
corporation, jointly and severally,

        Defendants.

Civil Action No. 03-71542
Hon. John Corbett O'Meara
Magistrate Judge Wallace Capel, Jr.

Andrew J. Munro (P30304)
Andrew M. Zack (P27427)
Michael D. Kennedy (P55983)
MUNRO AND ZACK, P.C.
Attorneys for Plaintiffs
3250 West Big Beaver Road, Suite 520
Troy, Michigan 48084
(248) 643-9494

David M. Hayes (P14764)
CLARK HILL, P.L.C.
Attorney for NHL Enterprises, L.P.
500 Woodward Avenue, Suite 3500
Detroit, Michigan 48226-3435
(313) 965-8300

David N. Zacks (P34192)
LEWIS & MUNDAY, P.C.
Attorney for the Coca-Cola Company and
Coca-Cola Enterprises, Inc.
1300 First National Building
660 Woodward Avenue
Detroit, Michigan 48226-3531
(313) 961-2550

Gerald E. McGlynn (P41149)
Robert A. Bondra (P61345)
BLISS McGLYNN, P.C.
Attorneys for Detroit Red Wings, Inc.
2075 West Big Beaver Road, Suite 600
Troy, Michigan 48084
(248) 649-6090

## DEFENDANT DETROIT RED WINGS, INC.'S
### FIRST SUPPLEMENTAL RESPONSE TO PLAINTIFFS' DISCOVERY REQUESTS

Pursuant to the Federal Rules of Civil Procedure, Defendant, Detroit Red Wings, Inc. ("DRW") hereby supplements its responses to "Plaintiffs' Discovery Requests to Defendant Detroit Red Wings, Inc." by submitting the following answers and objections:

DRW's answers are made without waiving or intending to waive any objections as to relevancy, privilege, or admissibility of any information provided in answering Plaintiffs' interrogatories and requests for production in any subsequent proceeding or at the trial of this or any other action on any ground. A partial answer to any discovery request that has been objected to, in whole or in part, is not intended to be a waiver of the objection.

As discovery is on-going, DRW reserves the right to amend, supplement and/or alter its responses as necessary during the course of discovery as additional information comes to light in accordance with the Federal Rules of Civil Procedure.

## GENERAL OBJECTIONS

Defendant Detroit Red Wings, Inc. provide the following answers to Plaintiffs' discovery requests subject to the following general objections:

1.   DRW objects to these interrogatories and requests for the production of documents and things to the extent that they seek information which is neither relevant to the issues raised in the lawsuit nor reasonably calculated to lead to the discovery of admissible evidence.  Specifically and not by way of limitation, DRW objects to the extent that any interrogatory and/or request for the production of documents and things relating to Counts VIII - X of Plaintiffs' First Amended Complaint which were dismissed by this Court pursuant to an Order issued on May 15, 2003, and further clarified by the Court on May 28, 2003 as well as any interrogatory and/or request for the production of documents and things relating to Counts III –

V, and VII of Plaintiffs' First Amended Complaint which were dismissed by this Court pursuant to an Order issued on August 12, 2003.

2. DRW objects to the "Definitions" and the "General Instructions" as being unduly broad and burdensome. The Red Wings respond to the discovery requests by using the ordinary meaning of the terms used in the discovery requests in compliance with the requirements the Federal Rules of Civil Procedure.

3. DRW responds to and further object to Plaintiffs' Discovery Requests as with each answer incorporating the foregoing general objections.

## DRW'S RESPONSES TO PLAINTIFFS' DISCOVERY REQUESTS

### INTERROGATORY NO. 1:

State whether any "Retail Sales" of "Wing Nut Merchandise", as those terms are defined in Paragraph 3(b) of the Settlement Agreement, have been made from May 9, 2000 to the present. If so, state:

a. The name and address of the person or entity who made the "Retail Sales";
b. The dates of such "Retail Sales" made by each person or entity;
c. The amount of "Retail Sales" made by each person or entity;
d. The names and titles of any employees or representatives of the Red Wings whose responsibilities included promoting, making or monitoring "Retail Sales" and the efforts they made to do so;
e. Identify all documents evidencing, referring or relating to the "Retail Sales" made by each person or entity that made such sales and/or the promotion or monitoring of those "Retail Sales".

### ANSWER:

DRW objects to this interrogatory as seeking information which is neither relevant to the issues, claims and/or defenses raised in the lawsuit nor reasonably calculated to lead to the discovery of admissible evidence. Specifically, this interrogatory seeks information pertaining to

2

merchandise bearing the "Wing Nut" mark and the sale thereof, neither of which is relevant to the remaining issues in this lawsuit.

## REQUEST FOR PRODUCTION NO. 1:

Produce copies of all documents identified in response to Interrogatory No. 1.

## RESPONSE:

See DRW's answer to Plaintiffs' interrogatory no. 1

## INTERROGATORY NO. 2:

State whether NHLE and the Red Wings have communicated since the Settlement Agreement was signed with regard to the sale of "Wing Nut Merchandise", "NHLE Product" and/or "Team Product", "Net Sales" or "Retail Sales", as those terms are defined in Paragraph 3(b) of the Settlement Agreement. If so,
   a.   Identify the persons who participated in those communications;
   b.   The dates of such communications;
   c.   The substance of such communications;
   d.   Identify all documents evidencing, referring or relating to those communications.

## ANSWER:

See DRW's answer to Plaintiffs' interrogatory no.1.

## REQUEST FOR PRODUCTION NO. 2:

Produce copies of all documents identified in response to Interrogatory No. 2.

## RESPONSE:

See DRW's answer to Plaintiffs' interrogatory no.1.

## INTERROGATORY NO. 3:

State whether the Red Wings have sold any merchandise, including but not limited to T-shirts, bearing the likeness or image of a wing nut since May 9, 2000. If so, state:

    a.    The types and descriptions of such merchandise;

    b.    The dates of such sales;

    c.    The names, addresses and titles of the persons employed by the Red Wings whose responsibilities included promotion, making or monitoring sales of such merchandise;

    d.    The names and addresses of the persons or entities to whom the Red Wings have sold such merchandise and/or the locations at which the Red Wings have sold such merchandise directly to the public;

    e.    The wholesale and retail prices at which such merchandise was sold by the Red Wings;

    f.    The amounts and/or number of items still in stock or in inventory;

    g.    The volumes, revenues and profits of such sales;

    h.    The names and addresses of the persons or entities who manufactured such merchandise for the Red Wings;

    i.    Identify all documents relating to the sale of such merchandise, including, but not limited to, bills, invoices, receipts, correspondence, notes, memoranda, advertising materials, sales records, sales reports and inventory reports.

## ANSWER:

DRW objects to this interrogatory to the extent that it seeks information outside of its custody or control or information that may be in the possession of another and not DRW as being unduly broad and burdensome. Subject to the foregoing objection, DRW responds to this interrogatory as follows: Yes.

    a.    Long-sleeved and short-sleeved T-shirts.

    b.    Appendix 2 of DRW's June 10, 2003 letter to Mr. Andrew J. Munro is responsive to this request. Further, pursuant to Fed. R. Civ. P. 33(d) DRW shall produce confidential documents from which the answer to this interrogatory may be derived upon the entry of a suitable protective order.

    c.    Jim Urban, former employee of DRW, 5058 Hilltop Ct., Clarkston, Michigan 48348.

d.   The names and addresses of the persons or entities to whom DRW has sold the merchandise identified in this interrogatory are unknown. DRW has sold the merchandise described in this interrogatory directly to the public at concession stands located in Joe Louis Arena and Hockeytown Authentic stores located in Troy, Michigan.

e-f.   Appendix 2 of DRW's June 10, 2003 letter to Mr. Andrew J. Munro is responsive to this request. Further, pursuant to Fed. R. Civ. P. 33(d) DRW shall produce confidential documents from which the answer to this interrogatory may be derived upon the entry of a suitable protective order.

g-i.   DRW objects to sections g-i of this interrogatory as seeking confidential information. Subject to this objection, Appendix 2 of DRW's June 10, 2003 letter to Mr. Andrew J. Munro is responsive to this request. Further, pursuant to Fed. R. Civ. P. 33(d) DRW shall produce confidential documents from which the answer to this interrogatory may be derived upon the entry of a suitable protective order.

## REQUEST FOR PRODUCTION NO. 3:

Produce copies of all documents identified in response to Interrogatory No. 3.

## RESPONSE:

See DRW's answer to Plaintiffs' interrogatory no.3.

## INTERROGATORY NO. 4:

State whether the Red Wings, any person or entity on its behalf (including, but not limited to counsel) or any other person or entity determined whether permission needed to be

obtained from the Kellmans to use the likeness or image of a wing nut on any merchandise, including but not limited to T-shirts. If so, state:

    a.    The identities of the persons or entities which made that determination;

    b.    The basis for the determination;

    c.    The efforts made to obtain permission;

    d.    The identities of all persons or entities who communicated regarding the use of the likeness or image and/or the need to obtain permission for such use and the dates and substance of such communications;

    e.    Identify all documents evidencing, referring or relating to the answer to this Interrogatory.

**ANSWER:**

DRW objects to this interrogatory as seeking information that is neither relevant to the issues, claims and/or defenses in this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence. This interrogatory seeks information pertaining to "the likeness or image of a wing nut" and not Plaintiffs' "Wing Nut Sculpture." DRW objects to this interrogatory a being vague, overbroad, and unintelligible as to the meaning of the phrase, "likeness or image of a wing nut." DRW further objects to this interrogatory to the extent that it seeks information outside of its custody or control or information that may be in the possession of another and not DRW as being unduly broad and burdensome. DRW further objects to this interrogatory to the extent that it seeks information protected by attorney-client privilege, work product, or other confidential information. Subject to the foregoing objections, DRW responds to this interrogatory as follows: Yes.

    a.    Robert E. Carr

    b.    Paragraph 3b of the May 9, 2000 Settlement Agreement.

    c.    None.

    d.    n/a

    e.    The May 9, 2000 Settlement Agreement.

## REQUEST FOR PRODUCTION NO. 4:

Produce copies of all documents identified in response to Interrogatory No. 4.

## RESPONSE:

Plaintiffs already have a copy of the May 9, 2000 Settlement Agreement.

## INTERROGATORY NO. 5:

With respect to the Coca-Cola's Wing-Nuts Campaign, state whether the Red Wings communicated with any employees or representatives of Coca-Cola or any advertising firms or agencies. If so, state:

    a.    The names, addresses and titles of the persons involved in such communications;

    b.    The dates of such communications;

    c.    The substance of such communications;

    d.    Identify all documents evidencing, referring or relating to such communications.

## ANSWER:

DRW objects to this interrogatory as unduly vague, overbroad, and therefore, burdensome to the extent that it seeks all purported communication between DRW, Coca-Cola, and other third parties regarding Coca-Cola's "Wing-Nuts Campaign." DRW also objects to this interrogatory to the extent that it seeks information outside of its custody or control or information that may be in the possession of another and not DRW as being unduly broad and burdensome. DRW further objects to this interrogatory to the extent that it seeks information protected by attorney-client privilege, work product, or other confidential information.

## REQUEST FOR PRODUCTION NO. 5:

Produce copies of all documents identified in response to Interrogatory No. 5.

## RESPONSE:

See DRW's answer to Plaintiffs' interrogatory no.5.

**INTERROGATORY NO. 6:**

State whether Coca-Cola or any person or entity on its behalf, including but not limited to any advertising firm or agency, paid the Red Wings any fees or compensation in connection with the Coca-Cola's Wing-Nuts Campaign. If so, state:

    a.    The amount of such fees or compensation;

    b.    The dates such fees or compensation were paid;

    c.    The names and addresses of the persons or entities who made such payments;

    d.    Whether there were any communications, negotiations, agreements or contracts relating to such payments;

    e.    Identify all documents evidencing, referring or relating to such payments, communications, negotiations, agreements or contracts.

**ANSWER:**

DRW objects to this interrogatory as unduly vague, overbroad, and therefore, burdensome to the extent that it seeks all purported communication between DRW, Coca-Cola, and other third parties regarding Coca-Cola's "Wing-Nuts Campaign." DRW also objects to this interrogatory to the extent that it seeks information outside of its custody or control or information that may be in the possession of another and not DRW as being unduly broad and burdensome. DRW further objects to sections a, and c-e of this interrogatory to the extent that it seeks information protected by attorney-client privilege, work product, or other confidential information. Without waiving the objections noted above, and as best understood, DRW responds to this interrogatory as follows: Neither Coca-Cola or any person or entity on its behalf paid DRW any fees or compensation in connection with Coca-Cola's "Wing-Nuts Campaign."

**REQUEST FOR PRODUCTION NO. 6:**

Produce copies of all documents identified in response to Interrogatory No. 6.

**RESPONSE:**

See DRW's answer to Plaintiffs' interrogatory no.6.

## INTERROGATORY NO. 7:

State whether the Red Wings, any person or entity on its behalf (including, but not limited to counsel) or any other person or entity determined whether permission needed to be obtained from the Kellmans with respect to the use of a likeness or reproduction of Plaintiffs' Wing Nut Sculpture in connection with the Coca-Cola's Wing-Nuts Campaign. If so, state:

    a.    The identities of the persons or entities which made that determination;

    b.    The basis for the determination;

    c.    The efforts made to obtain permission;

    d.    The identities of all persons or entities who communicated regarding the use of the likeness or image and/or the need to obtain permission for such use and the dates and substance of such communications;

    e.    Identify all documents evidencing, referring or relating to the answer to this Interrogatory.

## ANSWER:

DRW objects to this interrogatory a being vague, overbroad, and unintelligible as to the meaning of the phrase, "likeness or reproduction of Plaintiffs' Wing Nut Sculpture." DRW further objects to this interrogatory to the extent that it seeks information outside of its custody or control or information that may be in the possession of another and not DRW as being unduly broad and burdensome. DRW further objects to this interrogatory to the extent that it seeks information protected by attorney-client privilege, work product, or other confidential information. Without waiving the objections noted above, and as best understood, DRW responds to this interrogatory as follows: Yes.

    a.    Robert E. Carr

    b.    Paragraph 3b of the May 9, 2000 Settlement Agreement.

    c.    None.

    d.    n/a

    e.    The May 9, 2000 Settlement Agreement.

## REQUEST FOR PRODUCTION NO. 7:

Produce copies of all documents identified in response to Interrogatory No. 7.

## RESPONSE:

Plaintiffs already have a copy of the May 9, 2000 Settlement Agreement.

## INTERROGATORY NO. 8:

If the Red Wings contend that the likeness or image of a wing nut on any merchandise, including but not limited to T-shirts, that it has sold does not infringe on the Wing Nut Copyright and/or the Wing Nut Patent or is an independent creation, state all facts on which that contention is based, identify all persons with knowledge of such facts and identify all documents supporting that contention, including but not limited to opinions of counsel.

## ANSWER:

DRW objects to this interrogatory to the extent that it seeks information pertaining to the "Wing Nut Patent" which is no longer relevant to this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence.  DRW further objects to this interrogatory to the extent that it seeks information protected by attorney-client privilege, work product, or other confidential information.  Notwithstanding the foregoing, DRW answers this interrogatory as follows:

All current facts on which DRW relies for its contention that the likeness or image of a wing nut on its merchandise does not infringe Plaintiffs' Wing Nut Copyright are identified in the pleadings, and other documents filed by the parties to this lawsuit, all of which are in Plaintiffs' possession. Persons with knowledge of such facts are identified on Defendants' Initial Disclosure pursuant to Fed. R. Civ. P. 26.  DRW may supplement its answer to this interrogatory according to the Federal Rules of Civil Procedure.

## REQUEST FOR PRODUCTION NO. 8:

Produce copies of all documents identified in response to Interrogatory No. 8.

## RESPONSE:

See DRW's answer to Plaintiffs' interrogatory no.8.


## INTERROGATORY NO. 9:

If the Red Wings contend that the likeness or reproduction of Plaintiffs' Wing Nut Sculpture used in connection with the Coca-Cola's Wing-Nuts Campaign does not infringe on the Wing Nut Copyright and/or the Wing Nut Patent or is an independent creation, state all facts on which that contention is based, identify all persons with knowledge of such facts and identify all documents supporting that contention, including but not limited to opinions of counsel.

## ANSWER:

DRW objects to this interrogatory to the extent that it seeks information pertaining to the "Wing Nut Patent" which is no longer relevant to this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence. DRW further objects to this interrogatory to the extent that it seeks information protected by attorney-client privilege, work product, or other confidential information. Notwithstanding the foregoing, DRW answers this interrogatory as follows:

All current facts on which DRW's relies for its contention that the likeness or reproduction of Plaintiffs' Wing Nut sculpture used in connection with Coca-Cola's "Wing-Nuts Campaign" does not infringe Plaintiffs' Wing Nut Copyright are identified in the pleadings, and other documents filed by the parties to this lawsuit, all of which are in Plaintiffs' possession. Persons with knowledge of such facts are identified on Defendants' Initial Disclosure pursuant to Fed. R. Civ. P. 26. DRW may supplement its answer to this interrogatory according to the Federal Rules of Civil Procedure.

11

## REQUEST FOR PRODUCTION NO. 9:

Produce copies of all documents identified in response to Interrogatory No. 9.

## RESPONSE:

See DRW's answer to Plaintiffs' interrogatory no.9.

## INTERROGATORY NO. 10:

With respect to any merchandise, including but not limited to T-shirts, bearing the likeness or image of a wing nut sold by the Red Wings since May 9, 2000, state:

    a.    The identities of any persons or entities who conceived or developed any facet or portion of such merchandise, including but not limited to the likeness or image of a wing nut;

    b.    How such persons or entities conceived or developed any facet or portion of such merchandise, including but not limited to the likeness or image of a wing nut;

    c.    Whether any facet or portion of such merchandise, including but not limited to the likeness or image of a wing nut, is or was based on the Wing Nut Sculpture that is the subject of the Wing Nut Copyright and if so, identify the facet or portion and the manner in which it is or was based on the Wing Nut Sculpture;

    d.    Identify all documents evidencing, referring or relating to the answer to this Interrogatory.

## ANSWER:

    a-b.    DRW objects to sections a-b of this interrogatory to the extent that it seeks information outside of its custody or control or information that may be in the possession of another and not DRW as being unduly broad and burdensome. DRW further objects to sections a-b of this interrogatory to the extent that it seeks information protected by attorney-client privilege, work product, or other confidential information. Subject to the foregoing objections, DRW responds to this interrogatory as follows: Robin Brant, former employee of Skyline Custom Impressions (no longer in business), former address and phone number: 32046 Edward Street, Madison Heights, Michigan 48071, (248) 588-8075.

12

c.   DRW objects to subparagraph c of this interrogatory a being vague, overbroad, and therefore unintelligible. Plaintiffs have yet to define the protective elements of the "Wing Nut Sculpture," when compared to the elements of a generic wing nut in a manner that would enable DRW to answer this interrogatory.

d.   DRW objects to subparagraph d of this interrogatory a being vague, unduly broad, and over burdensome in that it requests "all documents evidencing, referring, or relating to the answer to this interrogatory." DRW cannot possibly identify "all" such documents. In any event, DRW asserts that relevant documents have been produced in this case or have been otherwise attached as exhibits to various pleadings filed by the parties in this case.

## REQUEST FOR PRODUCTION NO. 10:

Produce copies of all documents identified in response to Interrogatory No. 10.

## RESPONSE:

See DRW's answer to Plaintiffs' interrogatory no.10.

## INTERROGATORY NO. 11:

State whether any employees or representatives of the Red Wings have communicated with any employees or representatives of any of the other Defendants in this lawsuit since January 27, 2003 regarding any of the matters raised in the January 27, 2003 letter attached as Exhibit 1. If so, state:

a.   The identities of the persons involved in such communications;
b.   The dates and substance of such communications;
c.   Identify all documents evidencing, referring or relating to the answer to this Interrogatory.

## ANSWER:

DRW objects to this interrogatory a being unintelligible. Specifically, Plaintiffs' discovery requests do not include an "Exhibit 1." DRW further objects to this interrogatory to

13

the extent that it seeks information outside of its custody or control or information that may be in the possession of another and not DRW and also as being vague, unduly broad and over burdensome.  DRW further objects to this interrogatory to the extent that it seeks information protected by attorney-client privilege, work product, or other confidential information.

## REQUEST FOR PRODUCTION NO. 11:

Produce copies of all documents identified in response to Interrogatory No. 11.

## RESPONSE:

See DRW's answer to Plaintiffs' interrogatory no.11.

## INTERROGATORY NO. 12:

Identify all insurance policies which may provide the Red Wings with coverage for the claims asserted against it by Plaintiffs in this lawsuit and all communications with any insurance company or any representative of an insurance company regarding such coverage and/or this lawsuit.   Identify all documents evidencing, referring or relating to the answer to this Interrogatory.

## ANSWER:

None.

## REQUEST FOR PRODUCTION NO. 12:

Produce copies of all documents identified in response to Interrogatory No. 12.

## RESPONSE:

See DRW's answer to Plaintiffs' interrogatory no.12.

THE DETROIT RED WINGS, INC.

Date: January 23 2004    By:  _____

Robert Carr
Corporate Counsel
The Detroit Red Wings, Inc.

As to objections only:

BLISS McGLYNN, P.C.

Dated: January 23, 2004

Gerald E. McGlynn, III (P41149)
Robert A. Bondra (P61345)
Bliss McGlynn, P.C.
2075 West Big Beaver Road, Suite 600
Troy, Michigan 48084
Phone: (248) 649-6090
*Attorneys for Defendant, the Detroit Red Wings, Inc.*



# United States District Court
# Eastern District of Michigan



## *Subpoena in a Civil Case and Return of Service Form*

| Plaintiff(s) | | Defendant(s) |
|---|---|---|
| Marc Kellman and David Kellman | V | The Coca-Cola Company, et al. |

TO:

Keeper of the Records
Skyline Screen Printing & Embroidery
32046 Edward
Madison Heights, MI 48071

CASE NO. 03-71542

JUDGE   John Corbett O'Meara

- ☐ SUBPOENA FOR ATTENDANCE AT TRIAL
- ☐ SUBPOENA FOR ATTENDANCE AT A DEPOSITION
- ☑ DOCUMENT PRODUCTION REQUEST ONLY
- ☐ PROPERTY INSPECTION REQUEST ONLY

| COMMAND TO APPEAR | YOU ARE HEREBY COMMANDED to appear at the place, date and time specified below to give testimony in the above case, and, if so indicated, to bring certain documents with you. |
|---|---|

Place:

Date:

Time:

- ☐ APPEARANCE WITH DOCUMENTS (SEE DESCRIPTION BELOW)
- ☐ APPEARANCE WITHOUT DOCUMENTS

| COMMAND FOR DOCUMENTS | YOU ARE HEREBY COMMANDED to have the following documents, objects or things delivered to the place listed below, or allow the inspection of the below-listed property at the date and time specified. |
|---|---|

Place:

Munro and Zack, P.C.
3250 West Big Beaver Road, Suite 520
Troy, MI 48084

Date: March 2, 2004

Time: 10:00 a.m. c.s.t.

Description of documents/items to be produced or property to be inspected:

See Attachment A.

---

This subpoena is issued by (name, address and telephone number of attorney:)

Andrew M. Zack, Esq.
Munro and Zack, P.C.
3250 West Big Beaver Road, Suite 520
Troy, MI 48084
(248) 643-9494

Date of execution

1/30/04

On behalf of the
☒ Plaintiff   ☐ Defendant

Signature of issuing attorney/court officer

*Andrew M. Zack*

INT-0129-MIE-4/92 REV. 4194

PAGE ONE OF TWO

**Attachment A**

All documents evidencing, referring or relating to:

1.   The design of any merchandise, including, but not limited to, T-shirts, bearing the likeness or image of a wing nut since May 9, 2000

2.   The manufacture of any merchandise, including, but not limited to, T-shirts, bearing the likeness or image of a wing nut since May 9, 2000

3.   Communications with employees or representatives of the Detroit Red Wings, Inc., Olympia Entertainment, Inc. and/or Hockeytown Authentic stores regarding the design or manufacture of any merchandise, including, but not limited to, T-shirts, bearing the likeness or image of a wing nut since May 9, 2000

4.   Orders and/or purchases of any merchandise, including, but not limited to, T-shirts, bearing the likeness or image of a wing nut since May 9, 2000, by employees or representatives of the Detroit Red Wings, Inc., Olympia Entertainment, Inc. and/or Hockeytown Authentic stores

5.   Shipment or delivery of any merchandise, including, but not limited to, T-shirts, bearing the likeness or image of a wing nut since May 9, 2000, ordered and/or purchased by employees or representatives of the Detroit Red Wings, Inc., Olympia Entertainment, Inc. and/or Hockeytown Authentic stores

5.   Payment and billing for of any merchandise, including, but not limited to, T-shirts, bearing the likeness or image of a wing nut since May 9, 2000, ordered and/or purchased by employees or representatives of the Detroit Red Wings, Inc., Olympia Entertainment, Inc. and/or Hockeytown Authentic stores

# United States District Court
# Eastern District of Michigan



## *Subpoena in a Civil Case and Return of Service Form*

| Plaintiff(s) | | Defendant(s) |
|---|---|---|
| Marc Kellman and David Kellman | v | The Coca-Cola Company, et al. |

TO:

Keeper of the Records
Skyline Custom Impressions
32046 Edward
Madison Heights, MI 48071

CASE NO. 03-71542

JUDGE   John Corbett O'Meara

- [ ] SUBPOENA FOR ATTENDANCE AT TRIAL
- [ ] SUBPOENA FOR ATTENDANCE AT A DEPOSITION
- [✓] DOCUMENT PRODUCTION REQUEST ONLY
- [ ] PROPERTY INSPECTION REQUEST ONLY

| COMMAND TO APPEAR | YOU ARE HEREBY COMMANDED to appear at the place, date and time specified below to give testimony in the above case, and, if so indicated, to bring certain documents with you. |
|---|---|

Place:

Date:

Time:

- [ ] APPEARANCE WITH DOCUMENTS (SEE DESCRIPTION BELOW)
- [ ] APPEARANCE WITHOUT DOCUMENTS

| COMMAND FOR DOCUMENTS | YOU ARE HEREBY COMMANDED to have the following documents, objects or things delivered to the place listed below, or allow the inspection of the below-listed property at the date and time specified. |
|---|---|

Place:

Munro and Zack, P.C.
3250 West Big Beaver Road, Suite 520
Troy, MI 48084

Date: March 2, 2004

Time: 10:00 a.m. e.s.t.

Description of documents/items to be produced or property to be inspected:

See Attachment A.

| This subpoena is issued by (name, address and telephone number of attorney;) | Date of execution | Signature of issuing attorney/court officer |
|---|---|---|
| Andrew M. Zack, Esq.<br>Munro and Zack, P.C.<br>3250 West Big Beaver Road, Suite 520<br>Troy, MI 48084<br>(248) 643-9494 | 1/30/04<br>On behalf of the<br>[X] Plaintiff  [ ] Defendant | *Andrew M. Zack* |

INT-0129-MIE-4/92 REV. 4194

PAGE ONE OF TWO

## Attachment A

All documents evidencing, referring or relating to:

1.  The design of any merchandise, including, but not limited to, T-shirts, bearing the likeness or image of a wing nut since May 9, 2000

2.  The manufacture of any merchandise, including, but not limited to, T-shirts, bearing the likeness or image of a wing nut since May 9, 2000

3.  Communications with employees or representatives of the Detroit Red Wings, Inc., Olympia Entertainment, Inc. and/or Hockeytown Authentic stores regarding the design or manufacture of any merchandise, including, but not limited to, T-shirts, bearing the likeness or image of a wing nut since May 9, 2000

4.  Orders and/or purchases of any merchandise, including, but not limited to, T-shirts, bearing the likeness or image of a wing nut since May 9, 2000, by employees or representatives of the Detroit Red Wings, Inc., Olympia Entertainment, Inc. and/or Hockeytown Authentic stores

5.  Shipment or delivery of any merchandise, including, but not limited to, T-shirts, bearing the likeness or image of a wing nut since May 9, 2000, ordered and/or purchased by employees or representatives of the Detroit Red Wings, Inc., Olympia Entertainment, Inc. and/or Hockeytown Authentic stores

5.  Payment and billing for of any merchandise, including, but not limited to, T-shirts, bearing the likeness or image of a wing nut since May 9, 2000, ordered and/or purchased by employees or representatives of the Detroit Red Wings, Inc., Olympia Entertainment, Inc. and/or Hockeytown Authentic stores





22046 EDWARD STREET
MADISON HTS., MI. 48071
VOICE   248.588.8075
FAX      248.588.7746

March 2, 2004

Attn. Mr. Andrew M. Zack
Munro and Zack, P.C.
3250 W. Big Beaver Road, Suite 520
Troy, MI 48084

Re:   Subpoena for Documents from Skyline
      Case No.: 03-71542 (Kellman et al. v. The Coca-Cola Company et al.)

Dear Mr. Zack:

Enclosed please find copies of all documents in my possession that are responsive to your subpoena. These documents comprise the contents of three files identified as, "Little Wing Nut," "Wing Nut Long-Sleeve Tee," and "A Wing Nut". Each file includes films that are essentially transparent sheets including a portion of the complete image. The films are used in the process of silk-screening. The "Little Wing Nut" file also includes samples of the complete image. Copies of these images are enclosed. The documents have been organized into three packets corresponding to the contents of each of the three files.

Sincerely,

David Khalil

Enclosure



GRAY 429









BLACK





RED 185









WHITE SHIRTS ONLY

RED INK





Sleeve Print
RED TEES
ONLY
white ink







ICE BLUE
247

